**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR INVESTIGATIVE REPORTING, | |
| *Plaintiff*, | |
| v. | Civil Action No.: 18-2901 (BAH) |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' CORRECTED MEMORANDUM IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

In this matter, Plaintiff, Center for Investigative Reporting ("Plaintiff"), challenges the manner in which Defendant, United States Customs and Border Protection ("CBP") (collectively, with Defendant United States Department of Homeland Security, "Defendants"), processed its Freedom of Information Act ("FOIA") request.  As detailed herein, CBP conducted searches reasonably calculated to locate responsive records.  Once located, CBP processed those records and released all responsive, non-exempt records (or portions thereof).  Accordingly, this Court should enter summary judgment in Defendants' favor.

**BACKGROUND**

On April 24, 2017, Plaintiff submitted a FOIA request seeking "[a]ny and all submissions, records, documents, white papers, memoranda and/or alike material related to [several] border fence/border wall contract proposals[.]"  Decl. of S. Suzuki ¶ 7 (hereinafter, "Suzuki Decl.").  CBP responded on August 3, 2017, stating that CBP was withholding all responsive records in full pursuant to FOIA Exemption 4.  *Id.* ¶ 9.

Plaintiff appealed this response to CBP's FOIA Appeals, Policy and Litigation ("FAPL") Branch.  *Id.* ¶ 10.  In response, CBP initiated further searches for responsive records.  *Id.* ¶ 11.  Specifically, CBP identified three offices as those likely to have responsive records (were they to exist): (i) the Office of Facilities and Asset Management ("OFAM"); (ii) the Office of Acquisition ("OA"); and (iii) the Office of Information Technology ("OIT").  *Id.*  CBP concluded that there were no other locations reasonably likely to have responsive records.  *Id.* ¶ 11.

*OFAM*.  CBP identified OFAM as a possible location for responsive records because it "manages CBP's facilities and tactical infrastructure portfolios including fencing along the Southwest border that is the subject of this FOIA request."  *Id.* ¶ 12.  OFAM searched its records using the specific "contract proposal numbers stated in the request, which are the requests for proposals for border wall prototypes."  *Id.*  OFAM located 101 pages of records.  *Id.*  Of these, CBP withheld 99 pages in full pursuant to Exemptions 5, 6, and 7(C).   Additionally, it released one page in part, withholding portions of that page pursuant to Exemptions 6 and 7(C).  *Id.*  Finally, CBP released the final page to Plaintiff in full.  *Id.*

*OA*.  CBP identified OA as a possible location for responsive records because it "was responsible for overseeing the requests for proposals that are the subject of this request."  *Id.* ¶ 13.  OA searched its records using "the contract proposal numbers stated in the request."  *Id.*  This search located 990 pages of records, which consisted primarily "of the successful proposals that were selected for contract award."  *Id.*  Of these, CBP released 946 pages in full to Plaintiff.  *Id.*  CBP withheld portions of the remaining 44 pages pursuant to Exemptions 6, 7(C), and 7(E).  *Id.*

*OIT*.  CBP identified OIT as a possible location for responsive records because it "delivers information technologies and services to CBP … in support of CBP's day-to-day activities to secure the border and facilitate trade and travel."  *Id.* ¶ 14.  CBP requested that OIT provide all

submissions sent to the email address BorderWallDesignBuild@cbp.dhs.gov.  *Id.*  This was the address that "served as the primary point of contact between the public and CBP for matters related to the border wall [requests for proposals] that are the subject of this request."  *Id.*; *see also id.*¶ 6. OIT identified 5,671 pages of records, the majority of which "consisted of 152 unsuccessful proposals (i.e., the proposals that were not selected by CBP to be awarded a contract)."  *Id.* ¶ 14. Of these, CBP withheld in full 5,489 pages of records pursuant to Exemptions 3, 4, 6, 7(C), and 7(E).  *Id.*  CBP released 110 pages in part, asserting Exemptions 4, 5, and 6.  *Id.*  Finally, CBP released the remaining 72 pages in full.  *Id.*

## STANDARD OF REVIEW

Defendants move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56.  Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party has satisfied its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 248.

The "vast majority" of FOIA cases are decided on motions for summary judgment. *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. DOJ*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment"); *Citizens for Responsibility & Ethics in Wash. v.*

*Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("*CREW*").  An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure.  *See Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980).

To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations.  *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Media Research Ctr.*, 818 F. Supp. 2d at 137.  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## ARGUMENT

## I.      CBP Performed Reasonable Searches For Responsive Records

### A.      Requirements for a Reasonable Search Under FOIA

Under FOIA, an agency must establish that it conducted a search "reasonably calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351; *see also Am. Immigration Council v. DHS*, 21 F. Supp. 3d 60, 70 (D.D.C. 2014) ("[a]n agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all

relevant documents") (quotation marks omitted) (hereinafter "*AIC*").  Here, the agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but whether the search for those documents was adequate."  *Weisberg*, 705 F.2d at 1485. A search is not inadequate merely because it failed to "uncover[] every document extant."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Judicial Watch v. Rossetti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured").  In this connection, it is axiomatic that the fundamental question is not "'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'"  *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg*, 705 F.2d at 1485).  It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed.  *See Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

An agency may satisfy its burden by providing an affidavit or declaration that "set[s] forth the search terms used and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched."  *AIC*, 21 F. Supp. 3d at 70.

### B.    CBP Performed Reasonable Searches

The Suzuki Declaration establishes that CBP conducted searches "reasonably calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351.  Specifically, the declaration spells out in detail the process by which CBP:  (i) identified the locations most likely to have responsive

records (were they to exist); and (ii) conducted searches reasonably likely to identify responsive records.

Here, CBP staff with knowledge of the agency's records and recordkeeping, *see* Suzuki Decl. ¶ 1, identified the three CBP offices likely to have responsive records, *see id.* ¶ 11.  As the declaration further explains, there were no other offices likely to have responsive records.  *See id.* Moreover, nothing in the identified records suggested that another location was reasonably likely to have responsive records.  *See id*.  A review of each office's mission confirms that it was appropriately identified as a likely location for responsive records.  *See id.* ¶¶ 12–14.  Specifically, Plaintiff's request sought submissions (or similar material) related to several specific "border fence/border wall contract proposals."  *Id.* ¶ 4.  Two of the identified offices—OFAM and OA— were clearly reasonable locations to be searched as each is responsible for work related to the "border fence/border wall" project.  *See id.* ¶¶ 12 (OFAM "manages CBP's facilities and tactical infrastructure portfolios, including fencing along the Southwest border"), 13 (OA oversaw the "requests for proposals" identified in Plaintiff's FOIA request).  The other—OIT—was identified because it managed the email address that CBP created to facilitate "contact between the public and CBP for matters related to the border wall [requests for proposals]" Plaintiff identified in its request.  *Id.* ¶ 14.

These offices, in turn, carried out reasonable searches for responsive records.  For OFAM and OA, the searches were conducted using the specific contract proposal numbers that Plaintiff listed in its FOIA request.  *See id.* ¶¶ 12–13.  For OIT, it reviewed the communications sent to the relevant email address to identify records relating to the contact proposals identified in Plaintiff's FOIA request.  *See id.* ¶ 14.  With this information, and the lack of any contrary evidence, there

can be no serious dispute that this process was "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

Ultimately, Plaintiff cannot overcome the presumption of good faith afforded to the Suzuki Declaration, *SafeCard Servs.*, 926 F.2d at 1200, and nothing in the responsive records suggests that other locations were likely to have additional responsive records or that any additional searches were likely to have identified additional responsive records, *see Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998). Accordingly, this Court should conclude that CBP has demonstrated that it made a good faith effort to conduct a search for the requested records, using methods that can be reasonably expected to produce the information requested. *See AIC*, 21 F. Supp. 3d at 70.

## II.     CBP Properly Withheld Portions of Responsive Records

### A.     Standards Regarding Withholdings

FOIA mandates disclosure of government records unless the record or a portion thereof falls within one of FOIA's enumerated exemptions. *See* 5 U.S.C. § 552(b). The Court may only compel disclosure of records or a portion thereof that do not fall within an exemption. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). FOIA's exemptions "are intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

### B.     Exemption 3

Exemption 3 permits an agency to withhold records "specifically exempted from disclosure by statute" provided that the statute either: "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). As the D.C. Circuit has explained, "Exemption 3 differs from other FOIA exemptions in that its

applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350–51 (D.C. Cir. 1978).  Consequently, under Exemption 3, judicial review is limited to whether (1) the withholding statute qualifies as an Exemption 3 statute; and (2) the withheld material satisfies the criteria of the exemption statute. *See CIA v. Sims*, 471 U.S. 159, 167 (1985).

CBP applied Exemption 3 to withhold records "specifically prohibited from being disclosed to any person under the FOIA pursuant to the National Defense Authorization Act of 1997 (codified at 41 U.S.C. § 253b(m) and currently located at 41 U.S.C. § 4702(b))."  Suzuki Decl. ¶ 20.  Specifically, § 4702(b) states that "[a] proposal in the possession or control of an executive agency may not be made available to any person under section 552 of title 5." 41 U.S.C. § 4702(b).  Accordingly, CBP withheld 5,482 pages "of proposal documents that were submitted in response to CBP's [requests for proposals] for prototype builds of the border wall."  Suzuki Decl. ¶ 21.  This included "concept papers, proposed contracts, financial information, cost estimates, charts, statements of qualifications, technical diagrams, and other related information." *Id.*  Accordingly, the Suzuki Declaration and accompanying *Vaughn* Index demonstrate that there can be no debate that CBP properly withheld these records pursuant to Exemption 3.  *See Sims*, 471 U.S. at 167.[1]

### C.    Exemption 4

FOIA Exemption 4 permits an agency to withhold "privileged or confidential" "trade secrets and commercial or financial information obtained from a person."  5 U.S.C. § 552(b)(4).

---

[1] For Exemption 3 (and each other Exemption asserted), CBP "reviewed the documents line-by-line" and confirmed that "all reasonably segregable portions of the relevant records have been released[.]"  Suzuki Decl. ¶ 42.

If the material does not constitute trade secrets, then to satisfy the burden of demonstrating that Exemption 4 was properly applied, the agency must demonstrate that the withheld material is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizens Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  Although FOIA does not define the term "commercial," the D.C. Circuit has "consistently held that [this] term … should be given [its] ordinary meaning[.]" *Id.*  "Information is commercial under this exemption if, in and of itself, it serves a commercial function or is of a commercial nature." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002).  Additionally, the scope of "commercial" information is applied more broadly where the provider of the records has a "commercial interest." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006).

CBP asserted Exemption 4 to withhold "information pertaining to matters such as specific company resources that are dedicated to construction, company border security capabilities, company financial data, and other contract management information that is unique to submitters such as specific measures undertaken to enhance overall contract performance."  Suzuki Decl. ¶ 22.  Accordingly, the withheld material was "commercial" information obtained from a "person." *Id.* ¶¶ 23–24; *see also Pub. Citizens Health Research Grp.*, 704 F.2d at 1290.

Additionally, the withheld information was "privileged or confidential."  Suzuki Decl. ¶ 25; *Pub. Citizens Health Research Grp.*, 704 F.2d at 1290.  Although the proposals were provided voluntarily, CBP dictated the contents of the submissions. *See* Suzuki Decl. ¶ 25. Accordingly, the proper "privilege or confidential" standards are those applicable to material the

government requires to be submitted.[2]  When the government requires submission of information, that information is "privileged or confidential" when it is likely to: "(1) impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained."  *Nat'l Parks & Conservation Assoc. v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974).  As the Suzuki Declaration explains in greater detail, releasing the withheld information "would cause substantial harm to the competitive vulnerabilities and operational capabilities of various competitors."  Suzuki Decl. ¶ 25.  Indeed, release "would enable competitors to exploit this information for their benefit by enhancing their ability to obtain future government contracts by formulating and altering their business strategies."  *Id.*  Accordingly, the Suzuki Declaration and accompanying *Vaughn* Index demonstrate that there can be no debate that CBP properly withheld this information pursuant to Exemption 4.  *See Pub. Citizens Health Research Grp.*, 704 F.2d at 1290.

> **D.     Exemption 5**

Documents covered by the deliberative process privilege and exempt under Exemption 5 include those "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *NLRB v. Sears, Roebuck*, 421 U.S. 132, 150 (1975) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)); *see McKinley v. FDIC*, 744 F. Supp. 2d 128, 137–38 (D.D.C. 2010).  As the Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of

---

[2] If the Court concludes otherwise and applies the standard applicable to voluntarily provided information, CBP argues that it has similarly satisfied this standard.  In such cases, the information is properly withheld pursuant to Exemption 4 if "it is of a kind that a provider would not customarily release to the public."  *Critical Mass Energy Proj. v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc).

discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quotation marks and citations omitted).

The deliberative process privilege is designed to prevent injury to the quality of agency decisions by: (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears, Roebuck*, 421 U.S. at 151–53; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Group Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). Examples of documents covered by the deliberative process privilege include: recommendations, draft documents, proposals, suggestions, advisory opinions, and other documents, such as email messages, that reflect the personal opinions of the author rather than the policy of the agency or the give and take of the policy making process. *See Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative. *Access Reports v. DOJ*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas*, 617 F.2d at 868; *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). For a document to be pre-decisional, it must be antecedent to the adoption of an agency policy. *See Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]"). To

show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'"  *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868); *see also Gold Anti-Trust Action Committee v. Bd. of Governors*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.") (citing *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).

A document is "deliberative" if it "'reflects the give-and-take of the consultative process.'" *McKinley*, 744 F. Supp. 2d at 138 (quoting *Coastal States Gas*, 617 F.2d at 866).  Thus, "'pre-decisional materials are not exempt merely because they are pre-decisional; they also must be part of the agency give-and-take of the deliberative process by which the decision itself is made.'" *Jowett v. Dep't of Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).  The privilege protects factual material if it is "inextricably intertwined" with deliberative material, *FPL Grp.*, 698 F. Supp. 2d at 81, or if disclosure "would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'"  *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).  "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'"  *Access Reports*, 926 F.2d at 1195 (quoting *Dudman*, 815 F.2d at 1567–68).

12

CBP asserted Exemption 5 to withhold material pursuant to the deliberative process privilege. Suzuki Decl. ¶ 28. As the Suzuki Declaration and *Vaughn* Index explain in greater detail, the withheld information satisfies each prong of the test for withholding such information under the deliberative process privilege. The withheld information is "predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the evolving and ongoing border wall contracting, procurement, and construction process." *Id.* ¶ 30. This "contain[ed] information under consideration by CBP as the agency moved towards a decision on how to administer the evolving process." *Id.* Further, releasing this information would have caused harm—it "would have revealed how CBP employees are prioritizing different facts and what facts they consider to be important in the process." *Id.* Additionally, releasing the information would have caused harm by creating "confusion regarding reasons and rationales that may not ultimately be the grounds for any actions the agency may take regarding the ongoing process." *Id.* Accordingly, the Suzuki Declaration and accompanying *Vaughn* Index demonstrate that there can be no debate that CBP properly asserted Exemption 5 and the deliberative process privilege to withhold this information. *See Access Reports*, 926 F.2d at 1194.

### E.      Exemptions 6 and 7(C)

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[3] The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that

---

[3] Exemption 7(C) provides similar, albeit broader, privacy protections and "establishes a lower bar for withholding material." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).

individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't. Accountability Proj. v. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010).   In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).   "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency." *Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Reporters Comm.*, 489 U.S. at 763–65. And "the concept of personal privacy … is not some limited or 'cramped notion' of that idea," *NARA v. Favish*, 541 U.S. 157, 165–70 (2004) (construing analogous Exemption 7(C)), but rather is grounded in "both the common law and the literal understandings of privacy [that] encompass the individual's control of information concerning his or her person," *Reporters Comm.*, 489 U.S. at 763.   "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005).   An individual's

privacy interest "is not limited to [personal information] of an embarrassing or intimate nature."

*People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007).

Indeed, in enacting FOIA, "Congressional concern for the protection of the kind of confidential

data usually included in a personnel file is abundantly clear." *Dep't of Air Force v. Rose*, 425 U.S.

352, 372 (1976).

Moreover, "where there is a substantial probability that disclosure will cause an

interference with personal privacy, it matters not that there may be two or three links in the causal

chain." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989).  Under

Exemption 6, any personal privacy interest greater than *de minimis* is considered to be

"substantial."  *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1050

(D.C. Cir. 2009).

CBP asserted Exemption 6 to withhold "the names and other personally identifying

information of CBP employees[,] … such as telephone numbers and email addresses."  Suzuki

Decl. ¶ 33.  CBP similarly asserted Exemption 6 to withhold personally identifying information

"of the third party individuals that are identified in the various records[,] … include[ing]

information such as names, email addresses, addresses, photographs, and telephone numbers."  *Id.*

¶ 34.  This information was properly withheld as its "[r]elease … would constitute a clear invasion

of personal privacy" and "would not shed light on the actions of CBP[.]"  *Id.*  ¶ 33; *see also id.* ¶

34 (same).  CBP concluded that there "is no public interest in the disclosure of this information"

and thus "the individuals' right to privacy outweighs whatever public interest, if any, might exist

in the information."  *Id.*[4]  Accordingly, the Suzuki Declaration and accompanying *Vaughn* Index

---

[4] CBP asserted Exemption 7(C) to withhold the same information as it withheld pursuant to
Exemption 6.  *See* Suzuki Decl. ¶ 35 (explaining that material was also withheld "to protect the
identifies of CBP employees and other third parties that are identified in the records to protect

demonstrate that there can be no debate that this information was properly withheld pursuant to Exemptions 6 and 7(C).  *See Lepelletier*, 164 F.3d at 47; *ACLU*, 655 F.3d at 6.

F.      **Exemption 7(E)**

As a threshold matter, FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of several specified harms.  5 U.S.C. § 552(b)(7).  Prior to invoking any one of the enumerated harms under FOIA Exemption 7, the agency must demonstrate that the records at issue were compiled for a law enforcement purpose.  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011).

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *Blackwell*, 646 F.3d at 42 (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).  The exemption allows for withholding information "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).  "[A]n agency may seek to block the disclosure of

---

these individuals from unnecessary questioning and harassment concerning the law enforcement activities in which they are involved.").

internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts*, 294 F.3d at 79. No balancing of public and private interests is required to uphold a withholding under Exemption 7(E). *See Lesar v. DOJ*, 636 F.2d 472, 486 n.80 (D.C. Cir. 1980).

First, CBP satisfies the Exemption 7 threshold because the records at issue "consist[ ] of documents pertaining to the procurement and construction of a border wall which is meant to deter illegal crossings and to protect the United States from outside threats[.]" Suzuki Decl. ¶ 39. Second, the information was properly withheld under Exemption 7(E), because it constituted "information relating to tactical infrastructure construction plans that could reveal potential strengths or vulnerabilities to violators as well as other sensitive information relating to U.S. Government border facilities and operations." *Id.* ¶ 40. Indeed, releasing this information "could enable individuals to create a blueprint of specific station activity thereby revealing the comparative strengths and weaknesses of various U.S. Border Patrol stations." *Id.* Similarly, the Exemption 7(E) withholdings of "CBP accounting and data codes" was proper as it reveals CBP's "methods for categorizing, identifying, and navigating certain law enforcement records," the release of which "could enable individuals to identify and potentially access law enforcement records and CBP databases without authorization" and in "circumvent[ion of] the law." *Id.* ¶ 41.

Accordingly, the Suzuki Declaration and accompanying *Vaughn* Index demonstrate that there can be no debate that CBP properly withheld this information pursuant to Exemption 7(E). *Blackwell*, 646 F.3d at 42.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment.

May 15, 2019                                  Respectfully submitted,

                                              JESSIE K. LIU
                                              D.C. Bar #472845
                                              United States Attorney

                                              DANIEL F. VAN HORN
                                              D.C. Bar #924092
                                              Chief, Civil Division

                                By:           */s/ Brian J. Field*
                                              BRIAN J. FIELD
                                              D.C. Bar #985577
                                              Assistant United States Attorney
                                              555 4th Street, N.W.
                                              Washington, D.C. 20530
                                              Tel: (202) 252-2551
                                              E-mail: Brian.Field@usdoj.gov