## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR INVESTIGATIVE
REPORTING,

*Plaintiff,*

v.

Civil Action No.: 18-2901 (BAH)

UNITED STATES CUSTOMS AND BORDER
PROTECTION, *et. al.,*

*Defendants.*

## <u>DECLARATION OF SHARI SUZUKI</u>

I, Shari Suzuki, declare as follows:

1.  I am the Freedom of Information Act (FOIA) Appeals Officer, and Chief of the

FOIA Appeals, Policy and Litigation (FAPL) Branch, Regulations and Rulings (RR),

Office of Trade (OT), U.S. Customs and Border Protection (CBP), U.S. Department of

Homeland Security (DHS).  The FAPL Branch is the office within DHS/CBP that is

charged, at all times pertinent to this litigation, with the responsibility of managing and

responding to administrative appeals of initial responses to information access requests

made pursuant to the FOIA, 5 U.S.C. § 552.

2.  As the Chief of the FAPL Branch, I am responsible for the overall

supervision and management of the FAPL Branch and I serve as the official with the

following duties and responsibilities, *inter alia*: 1) giving guidance and instructions to the

personnel in CBP regarding the processing of FOIA requests; 2) adjudicating

administrative appeals that concern FOIA requests; and, 3) overseeing all CBP activities related to information disclosure.  I have held this position since April 2, 2006.

3.   CBP's mission is to protect the borders of the United States against terrorists and the instruments of terror, enforce the customs and immigration laws of the United States, and foster our Nation's economy by facilitating lawful international trade and travel.  Our mission includes the inspection and processing of passengers, conveyances, and merchandise entering, transiting and departing the United States.  CBP is the unified border agency within the Department of Homeland Security charged with the management, control and protection of our nation's borders at and between the official ports of entry.  CBP is charged with keeping terrorists and terrorist weapons out of the country while enforcing over 400 Federal statutes on behalf of over 40 different Federal agencies.  The creation and implementation of effective law enforcement policies and procedures is paramount to achieving this mission.  The programs, policies and procedures at issue in this case are directly related to CBP's law enforcement activities and are used for border security and enforcement purposes.

4.   I am familiar with the Center for Investigative Reporting (hereinafter the "Plaintiff") request and subsequent appeal for information from CBP pursuant to the FOIA.  All information contained herein is based upon information furnished to me in my official capacities of FOIA Appeals Officer and FAPL Branch Chief.  The statements I make in this Declaration are based on my personal knowledge, which includes knowledge acquired through attorneys in my branch, and agency files that I personally reviewed in the course of my official duties.

5.   The purpose of this Declaration is to describe CBP's handling of the Plaintiff's

2

FOIA request and appeal and to provide a *Vaughn* Index identifying information responsive to the Plaintiff's FOIA request, but exempt from disclosure under the FOIA, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Attached hereto as Exhibit A is a true and correct copy of the *Vaughn* Index identifying the documents released to the Plaintiff under the FOIA and the statutory bases under the FOIA for the redaction of certain information from the records released to the Plaintiff. This Declaration, along with the *Vaughn* Index, provides an identification of information that is withheld, the statutory exemption(s) claimed, and the justification for asserting the exemptions used to withhold certain information contained in the records at issue.

6.      This Declaration consists of: (i) a summary of the relevant facts and correspondence regarding the Plaintiff's FOIA request; (ii) the justification for withholding information under the FOIA; and, (iii) a segregability statement.

I.      **SUMMARY OF RELEVANT FACTS AND CORRESPONDENCE CONCERNING THE PLAINTIFF'S FOIA REQUESTS**

7.      On March 17, 2017, CBP issued two Requests for Proposal (RFP), HSBP1017R0022 and HSBP1017R0023, seeking to award multiple contracts and initial task orders for the design and construction of border wall prototypes. CBP issued these two RFPs to acquire multiple conceptual wall designs with the intent of constructing multiple prototypes. More specifically, HSBP1017R0022 requested proposals for solid concrete wall prototypes while HSBP1017R0023 requested proposals for other wall prototypes. Prototyping is an industry-tested approach to identify the best solution when considering a new product or methodology. Through the construction of prototypes, CBP partners with industry to identify the best means and methods to construct border wall

before making a more substantial investment in construction.  CBP stated that all

prototypes were to be designed to deter illegal entry into the United States. Through the

prototyping process, CBP hoped to identify new designs or influences for new designs

that would expand the current border barrier toolkit that CBP uses to construct a border

wall system.  The RFPs provided that that proposal submissions and questions should be

submitted to an email account: BorderWallDesignBuild@cbp.dhs.gov.

7.      On April 24, 2017, the Plaintiff filed a FOIA request with the FOIA Division,

Privacy and Diversity Office (PDO), Office of the Commissioner, CBP, DHS.  In the

FOIA request, assigned case number CBP-2017-051381, the Plaintiff requested records

pertaining to:

> Any and all submissions, records, documents, white papers, memoranda and/or
> alike material related to border fence/border wall contract proposals, i.e.
> HSBP1017R0022, HSBP1017R0023, 2017-JC-RT-0001 and 2017-DHS-OCPO-
> RFI-0001 from the date of posting to the present.  Relevant records include but
> are not limited to:- Phase I proposal submissions – Notifications sent to submitters
> of proposals, whether successful or no – Phase II proposal submissions – All
> schedules, calendars and itineraries related to prototype presentations – Any and
> all recordings of prototype presentations – Any maps, GIS data, geotechnical data
> or site conditions information regarding the prototype site – Any materials related
> to scoring proposals and/or testing of prototypes and/or mockups – Results and/or
> scoring of prototypes and mockups – Border Patrol-approved design standards for
> fence/wall – Aerial and/or satellite photos of the prototype location – Evaluations,
> assessments, analyses, summaries, reviews and/or reports regarding the bid,
> submission, evaluation and prototype process.

The Plaintiff submitted a request for a fee waiver and a request for expedited processing

with their FOIA submission of April 24, 2017.

8.      The FOIA Division granted the Plaintiff's request for a fee waiver and request for

expedited processing on August 3, 2017.

9.      The FOIA Division also responded to the Plaintiff's FOIA request on August 3,

2017.  In their response letter to the Plaintiff, the FOIA Division stated that a search of

CBP databases produced responsive records but that the records were being withheld in their entirety pursuant to 5 U.S.C. §§ 552 (b)(4). The FOIA Division's response letter also stated that 2017-DHS-OCPO-RFI-0001 did not pertain to a CBP contract.

10.     The Plaintiff appealed the FOIA Division's August 3, 2017, determination by submission dated October 17, 2017. The Plaintiff's submission consisted of a letter with exhibits and was submitted to CBP through *FOIAonline* on October 26, 2017. *FOIAonline* is an online portal that serves as CBP's system for tracking FOIA requests. The Plaintiff's appeal was received by the FAPL Branch on October 27, 2017. In the appeal letter, the Plaintiff appealed the FOIA Division's determination to withhold the responsive records from disclosure because there were no trade secrets in the requested records which should be withheld pursuant to 5 U.S.C. §§ 552 (b)(4). The Plaintiff also stated that CBP's RFP's indicated that any information gathered through the proposal process would be in the public domain and not be considered confidential. For this reason, the Plaintiff claimed that the records also cannot be considered commercial or financial information that is privileged or confidential under 5 U.S.C. §§ 552 (b)(4). In addition, the Plaintiff appealed the FOIA Division's determination to withhold records in their entirety, stating that the decision to do so was overbroad and that there should be segregable information in the records that could be released.

11.     I directed an attorney on my staff to search for records that would be responsive to the Plaintiff's FOIA appeal. Regarding the parameters of the search, the FAPL Branch contacted the offices within CBP that would maintain such records, provided them with the Plaintiff's submission, and requested that the offices conduct a reasonable search for any responsive records that might exist. The offices within CBP that provided the

5

records under consideration in this case were the Office of Facilities and Asset

Management (OFAM), Office of Acquisition (OA), and Office of Information

Technology (OIT).   Based on nature of the original FOIA request and extensive

experience working with the FOIA Division and handling appeals of similar FOIA

requests, the FAPL Branch determined that there were no other CBP offices likely to

have responsive records.  In addition, none of the responsive records located by OFAM,

OA, and OIT suggested that there were other offices likely to have responsive records.

12.     The Office of Facilities and Asset Management (OFAM) delivers real property,

tactical infrastructure, energy and environmental, fleet, uniform, personal property

inventory, and other asset and administrative management services and support for CBP

employees.  OFAM manages CBP's facilities and tactical infrastructure portfolios

including fencing along the Southwest border that is the subject of this FOIA request.

OFAM searched for records based on the contract proposal numbers stated in the request

which are the requests for proposals for border wall prototypes.  The search by OFAM

produced 101 pages of documents.  Of the 101 pages of documents, 99 pages were

withheld from disclosure primarily pursuant to 5 U.S.C. § 552 (b)(5), but also pursuant to

5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E).  In addition, one page was released to the

Plaintiff with redactions made pursuant to 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C).  The

remaining one page was released to the Plaintiff without redaction.

13.     The Office of Acquisition (OA) supports CBP by providing expertise and

oversight in acquiring or procuring mission-essential systems, supplies, or services.  After

working closely with OFAM, OA was responsible for overseeing the requests for

proposals that are the subject of this request.  A contract specialist conducted the search

for responsive records within OA based on the contract proposal numbers stated in the request. The search for responsive records within OA produced 990 pages of documents. These documents primarily consist of the successful proposals that were selected for contract award. Of the 990 pages of documents, 946 pages were released to the Plaintiff without redaction. The remaining 44 pages were released to the Plaintiff with redactions made pursuant to 5 U.S.C. §§ 552 (b)(6), (b)(7)(C), and (b)(7)(E).

14.     The Office of Information Technology (OIT) delivers information technologies and services to CBP, other government agencies, the travelling public, and the international trade community in support of CBP's day-to-day activities to secure the border and facilitate trade and travel. The FAPL Branch requested that OIT provide submissions that were made to BorderWallDesignBuild@cbp.dhs.gov. The BorderWallDesignBuild@cbp.dhs.gov email account served as the primary point of contact between the public and CBP for matters related to the border wall RFP's that are the subject of this request, including the submission of proposals. Accordingly, the email account contained questions and responses pertaining to the RFP's as well as proposal submissions. The search by OIT produced 5,671 pages of documents. The bulk of the documents consisted of 152 unsuccessful proposals (i.e., the proposals that were not selected by CBP to be awarded a contract). Of the 5,671 pages of documents, 5,489 pages were withheld from disclosure pursuant to 5 U.S.C. §§ 552 (b)(3), (b)(4), (b)(6), (b)(7)(C), and (b)(7)(E). In addition, 110 pages of the documents were released to the Plaintiff with redactions made pursuant to 5 U.S.C. §§ 552 (b)(4), (b)(5), (b)(6), and (b)(7)(C). The remaining 72 pages of documents were released to the Plaintiff without redaction.

15.    The FAPL Branch responded to the Plaintiff's FOIA appeal by letter dated September 10, 2018. In the FAPL Branch letter to the Plaintiff, it was noted that 6,762 pages of documents were located during the search for responsive records. Of the 6,762 pages, 1,019 were released to the Plaintiff in their entirety. The FAPL Branch determined that 5,588 pages of documents should be withheld from disclosure pursuant to 5 U.S.C. §§ 552 (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E). Again, the bulk of those documents withheld in their entirety consist of the unsuccessful proposals that were not selected by CBP for contract award. The remaining 155 pages of documents were released with redactions made pursuant to 5 U.S.C. §§ 552 (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). Attached hereto as Exhibit B is a true and correct copy of the letter from the FAPL Branch to the Plaintiff dated September 10, 2018.

16.    On September 14, 2018, I received an email from the Plaintiff requesting a telephone call to discuss the FAPL Branch's response to the appeal. An attorney on my staff contacted the Plaintiff by telephone on September 17, 2018, to discuss the matter. The Plaintiff requested that the FAPL Branch produce a list of documents that would show which documents were withheld from disclosure and which redactions were applied during the processing of the appeal similar to a *Vaughn* index. On September 19, 2018, I emailed the Plaintiff and indicated that I was directing an attorney on my staff to create a list of documents that would include a brief description of each document (or group of documents), a brief description of the information that was redacted in each document (or group of documents), and the FOIA Exemptions that were applied to each document (or group of documents). An attorney on my staff emailed the Plaintiff the List of Documents as an email attachment on October 22, 2018. Attached hereto as Exhibit C is

8

a true and correct copy of the "List of Documents CBP-AP-2018-006188" attachment

that was emailed from the FAPL Branch to the Plaintiff on October 22, 2018.  Attached

hereto as Exhibit D is a true and correct copy of the email chain sent between the FAPL

Branch and the Plaintiff.  The emails were sent between September 14, 2018, and

October 22, 2018.

17.     In preparing the *Vaughn* Index for this matter, I noticed some errors in the List of

Documents.  The number of pages within each category of document in the *Vaughn*

Index and List of Documents closely correspond.  However, one email was found within

the proposal documents rather than with the emails where it belonged.

Similarly, the number of documents set forth as proposals in the *Vaughn* Index is 5,482

whereas in the List of Documents, the number of proposal documents is 5,483.  In

addition, the *Vaughn* Index more accurately describes the emails that were withheld from

disclosure.

18.     On January 30, 2019, I was notified that the Plaintiff filed the instant lawsuit.

**II.      JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER FOIA**

  **A.  5 U.S.C. § 552 (b)(3): Records Specifically Exempted from Disclosure
       by Statute**

19.     Exemption (b)(3) (5 U.S.C. § 552 (b)(3)) of the FOIA protects information

specifically exempted from disclosure by another statute, if the statute (A) requires that

the matters be withheld from the public in such a manner as to leave no discretion on the

issue, or (B) established particular criteria for withholding or refers to particular types of

matters to be withheld.  In applying FOIA Exemption (b)(3), The Court of Appeals for

the District of Columbia Circuit has held that records may be withheld under the

authority of another statute pursuant to FOIA Exemption (b)(3) "if – and only if – that

statute meets the requirements of Exemption 3, including the threshold requirement that it specifically exempt matters from disclosure." *Reporters Comm. for Freedom of the Press v. DOJ*, 816 F.2d 730, 734 (D.C. Cir. 1987), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989).  In *Reporters Committee*, the D.C. Circuit further stated that "[a] statute that is claimed to qualify as an Exemption 3 withholding statute must, on its face, exempt matters from disclosure.  [The court] must find a congressional purpose to exempt matters from disclosure in the actual words or the statute (or at least in the legislative history of FOIA) – not in the legislative history of the claimed withholding statute, nor in an agency's interpretation of the statute." *Reporters Comm.*, 816 F.2d at 735; *see also*, *Pub. Citizen*, 533 F.3d at 813-14; *Nat'l Ass'n of Home Builders*, 309 F.3d at 37 (finding that statute failed to qualify as withholding statute under FOIA Exemption (b)(3)).

20.     Proposals in the possession or control of a Federal agency were specifically prohibited from being disclosed to any person under the FOIA pursuant to The National Defense Authorization Act of 1997 (codified at 41 U.S.C. § 253b (m) and currently located at 41 U.S.C. § 4702 (b)).  Under 41 U.S.C. § 4702 (c), Federal agencies are prohibited from releasing any such proposals unless a proposal is set forth or incorporated by reference in a contract entered into between the agency and the contractor that submitted the proposal.  "Proposal" is defined under the statute as a proposal, including a technical, management, or cost proposal, submitted by a contractor in response to the requirements of a solicitation for a competitive proposal (41 U.S.C. § 4702 (a)).

21.     In this matter, CBP applied FOIA Exemption (b)(3) to withhold 5,482 pages of

10

proposal documents that were submitted in response to the CBP RFP's for prototype builds of the border wall. The proposals submissions included concept papers, proposed contracts, financial information, cost estimates, charts, statements of qualifications, technical diagrams, and other related information. FOIA Exemption (b)(3) was applied to withhold these proposal documents because they were not selected by CBP for inclusion in a contract or otherwise incorporated into a contract by reference. In other words, CBP withheld the unsuccessful proposal submissions in their entirety. It should be noted, at this juncture, that CBP did release with redactions the successful contracts that were selected for award.

### B.  5 U.S.C. § 552 (b)(4): Trade Secrets and Commercial or Financial Information Obtained from a Person and Privileged or Confidential

22.      Exemption (b)(4) (5 U.S.C. § 552 (b)(4)) of the FOIA protects trade secrets and commercial or financial information obtained from a person [that is] privileged and confidential. Redactions were made in this case pursuant to FOIA Exemption (b)(4) to withhold information pertaining to matters such as specific company resources that are dedicated to construction, company border security capabilities, company financial data, and other contract management information that is unique to submitters such as specific measures undertaken to enhance overall contract performance. FOIA Exemption (b)(4) was applied to portions of the documents that were released to the Plaintiff and to 4,999 pages of documents that were withheld in their entirety. The 4,999 pages consist of portions of the 152 unsuccessful proposal submissions that were also withheld under Exemption (b)(3).

23.      Because the information that was withheld did not relate to trade secrets, FOIA Exemption (b)(4) would only apply to: "(1) commercial and financial information, (2)

obtained from a person or by the government, (3) that is privileged and confidential."
*Watkins v. Customs & Border Protection*, 2011 U.S. App. LEXIS 9443 at 9 (9th Cir. May
6, 2011). The information that was withheld from disclosure in this case pursuant to
FOIA Exemption (b)(4) is commercial. Although not all information submitted to the
government by a commercial entity will be protected by FOIA Exemption (b)(4), the
courts interpret the term broadly and extend the exemption to cover any information in
which a third party has a "commercial interest." *Baker & Hostetler LLP v. Department
of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). The submitters of the information that
was redacted pursuant to FOIA Exemption (b)(4) have a clear commercial interest in the
information that was withheld.

24.     The information was obtained by a "person," satisfying the second prong of FOIA
Exemption (b)(4)'s requirements. Courts have also interpreted this prong broadly so as to
include any information submitted by "an individual, partnership, corporation,
association or public or private organization other than the agency." *Nadler v. FDIC*, 92
F. 3d 93, 95 (2d Cir. 1996). The redacted information in this case was provided to CBP
by private parties which each clearly fit the description of "person" within the meaning of
FOIA Exemption (b)(4).

25.     The third requirement of FOIA Exemption (b)(4) was satisfied because the
withheld information was considered to be "privileged and confidential" within the
meaning of Exemption (b)(4). Whether information submitted to a Federal agency is
considered "confidential" under FOIA Exemption (b)(4) depends on whether the
information was a required or voluntary submission to the government. If the
government required submission of the information, the exemption will only protect

commercial or financial material that is likely to: "(1) impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks and Conservation Association v. Morton*, 498 F.2d 765, 770 (D.C. Cir 1974). In contrast, FOIA Exemption (b)(4) offers broader protection for any financial or commercial information provided to the government on a voluntary basis. In such situations, information will be protected in all cases so long as "it is of a kind that a provider would not customarily release to the public." *Critical Mass Energy Project v. Nuclear Regulatory Commission, en banc,* 975 F.2d 871, 872 (D.C. Cir. 1992). Each party voluntarily submitted a proposal in order to be awarded a contract by CBP to build a prototype of the border wall. However, CBP required the submission of the information in order to adequately evaluate the proposals and ultimately award the contracts to build the prototypes of the wall. Therefore, because CBP required the submissions, in order to qualify for protection under FOIA Exemption (b)(4), disclosure of the information must be likely to (1) impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. In this case, the FAPL Branch determined that releasing the information that was withheld would cause substantial harm to the competitive positions of the submitters because releasing the information would reveal the competitive vulnerabilities and operational capabilities of various competitors. In this respect, releasing the information that was withheld would enable competitors to exploit this information for their benefit by enhancing their ability to obtain future government contracts by formulating and altering their business

strategies. This would thereby substantially harm the competitive positions of the submitters of the information by undercutting their ability to obtain future contracts. Additionally, it should be noted that the RFP's sought new designs or new ideas for border walls, and many of the proposals that were submitted contained innovative, novel and proprietary information that a submitter would not want released to competitors.

> ### C.  5 U.S.C. § 552 (b)(5): Inter-agency or Intra-agency Memorandums or Letters Which Would not be Available by Law to a Party Other Than an Agency in Litigation With the Agency

26.    Exemption (b)(5) (5 U.S.C. § 552 (b)(5)) of the FOIA protects inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. The statutory language unequivocally incorporates all civil discovery rules into FOIA Exemption (b)(5). The three primary, most frequently invoked privileges that have been held to be incorporated into FOIA Exemption (b)(5) are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

27.    The most commonly invoked privilege incorporated within FOIA Exemption 5 is the deliberative process privilege, the general purpose of which is to "prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Specifically, three policy purposes consistently have been held to constitute the basis for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. *See, e.g., Russell v. Dep't of the Air*

14

*Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Traditionally, the courts have established two fundamental requirements, both of which must be met, for the deliberative process privilege to be invoked. *Petroleum Info. Corp. v. United States Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). First, the communication must be predecisional, and second, the communication must be deliberative in that it makes recommendations or expresses opinions on legal or policy matters. *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

28.     The information withheld pursuant to the FOIA Exemption (b)(5) deliberative process privilege in this case includes documents such as the interagency acquisitions supplement, best procurement approach for assisted acquisitions document, terms and conditions for assisted acquisitions document, border wall funding spreadsheets, interagency agreements, proposed responses to Congressional questions with edits, draft border wall communication and outreach strategy plan and outline, internal white paper documents pertaining to acquiring prototype wall designs, schedules pertaining to border wall matters, an internal risk register, U.S. Border Patrol facilities and tactical infrastructure and Air and Marine PMO wall project requirements document, and portions of certain emails. In determining whether this information was properly withheld from disclosure pursuant to FOIA Exemption (b)(5), the initial consideration that must be made is whether the information being withheld is of the type intended to be covered by the phrase "inter-agency" or "intra-agency memorandums." The information being withheld pursuant to Exemption (b)(5) in this case was created by CBP employees in order to develop, examine, or propose CBP policies relating to the border wall.

Therefore, FAPL Branch determined that the initial threshold requirement of FOIA
Exemption (b)(5) was met in this case.

29.     Having satisfied the threshold requirement of FOIA Exemption (b)(5), the next
consideration was whether the information that was being withheld was considered both
predecisional and deliberative in nature.  The Supreme Court has held that "[a]gencies
are, and properly should be, engaged in a continuing process of examining their policies;
this process will generate memoranda containing recommendations which do not ripen
into agency decisions...".  *Sears*, 421 U.S. at 151 n. 18.  As such, courts have held that
FOIA Exemption (b)(5) can be applicable if documents are generated as part of such a
continuing process of decision making.  *See, e.g., Cassad v HHS*, 301 F.3d 1247, 1252
(10th Cir. 2002).  Categories of documents that are routinely protected by the deliberative
process privilege are "advisory opinions, recommendations, and deliberations comprising
part of a process by which governmental decisions and policies are formulated." *Sears*,
421 U.S. at 150.  They are protected because, by their very nature, their release would
likely "stifle honest and frank communication within the agency." *Coastal States*, 617
F.2d at 866.  To this end, it has been recognized that "[t]he deliberative process privilege
rests on the obvious realization that officials will not communicate candidly among
themselves if each remark is a potential item of discovery and front page news." *See,
Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).

30.     The information that was withheld pursuant to FOIA Exemption (b)(5) in this
case is predecisional and deliberative in that it consists of evaluations, opinions,
observations, and other findings that CBP employees deemed critical as part of
administering the evolving and ongoing border wall contracting, procurement, and

16

construction process. The FAPL Branch determined that these documents are
predecisional and deliberative in nature in that they contain information under
consideration by CBP as the agency moved towards a decision on how to administer the
evolving process. The process of developing new and innovative border fence designs is
an inherently deliberative process. Additionally, the procurement process is often an
evolving process involving timelines or plans that often have to be shifted and changed.
In this regard, the authors of the documents selected specific facts out of a larger group of
facts and this constituted an exercise of judgment by CBP personnel and this very act is
deliberative in nature. Release of the documents and information would have revealed
how CBP employees are prioritizing different facts and what facts they consider to be
important in the process. In addition, releasing these documents could result in confusion
regarding reasons and rationales that may not ultimately be the grounds for any actions
the agency may take regarding the ongoing process. Moreover, release of these
documents could chill open and frank discussions among CBP employees. We
specifically note that the documents contain employee findings;
alternatives/advantages/disadvantages/recommendations for different contracting,
procurement, and construction scenarios; suggested text proposals for agreements and
other documents; internal funding calculations; employee edits; proposed construction
schedules; proposed courses of action; and, analyses of proposed tactical infrastructure
projects. The act of distilling the evidence, which involves separating the significant
facts from the insignificant facts, constitutes an exercise of judgment by agency
personnel. Such selective facts are therefore entitled to the same protection as afforded to
purely deliberative materials, as their release would permit indirect inquiry into the

mental processes of employees and expose agency deliberations. If disclosed, this information could result in confusion regarding reasons and rationales that are not ultimately the grounds for the agency's actions and would chill open and frank discussions among those CBP employees that are involved in the border wall contracting, procurement, and construction process. This deliberative and pre-decisional information is precisely the type of material that the exemption was intended to cover as the information reflects agency deliberations and is therefore properly withheld from disclosure pursuant to FOIA Exemption (b)(5).

31.     The courts have also found that "drafts" are a category of document that are particularly likely to be found exempt under the deliberative process privilege. *Abdelfattah v. DHS*, 488 F.3d 178, 183 (3d Cir. 2007); *Gerstein v. CIA*, No. 06-4643, 2008 WL 4415080, at *16 (N.D. Cal. Sept. 26, 2008) (protecting draft letters); *Donham v. U.S. Forest Service*, No. 07-111, 2008 WL 2157167, at *5 (S.D. Ill. May 21, 2008) (finding draft documents to be "precisely the kind of documents that Exemption 5 and the deliberative process privilege seek to protect from disclosure"); *Pub. Employees for Envtl Responsibility v. Bloch*, 532 F. Supp. 2d 19, 22 (D.D.C. 2008) (protecting draft "position descriptions"); *Ebersole v. United States*, No. 06-2219, 2007 WL 2908725, at *5 (D. Md. September 24, 2007) (protecting draft memorandum of understanding, noting that draft "does not memorialize a final agency decision"); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (protecting draft agreement and draft of letter from Secretary of Commerce). Therefore, in addition to the reasons set forth above, the FAPL Branch determined that draft documents were properly withheld from disclosure pursuant to FOIA Exemption (b)(5).

**D. 5 U.S.C. § 552 (b)(6): Personnel and Medical Files and Similar Files the Disclosure of Which Would Constitute a Clearly Unwarranted Invasion of Personal Privacy**

32.     Exemption (b)(6) (5 U.S.C. § 552(b)(6)) of the FOIA exempts from disclosure personnel and medical files and similar files the release of which would constitute a clearly unwarranted invasion of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The United States Supreme Court in *United States v. Washington Post Co.,* 456 U.S. 595 (1982) stated in reliance on the legislative history of the FOIA that the phrase "personnel and medical and similar files" was to be broadly interpreted and made it clear that all information that "applies to a particular individual" meets the threshold requirement for FOIA Exemption (b)(6) protection. Once the threshold requirement is met, FOIA Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. *Dep't of the Air Force v. Rose,* 425 U.S. 352 (1976). It must be ascertained whether a protectible privacy interest exists that would be threatened by disclosure.

33.     In this matter, information redacted pursuant to FOIA Exemption (b)(6) includes the names and other personally identifying information of CBP employees. This personally identifying information includes information such as telephone numbers and email addresses. Release of this information would constitute a clearly unwarranted invasion of personal privacy. The CBP employees have a protectable privacy interest in this information that would be threatened by disclosure. Release of this information would not shed light on the actions of CBP and there is no public interest in the

19

disclosure of this information. Accordingly, the individuals' right to privacy outweighs whatever public interest, if any, might exist in knowing the information.

34.     FOIA Exemption (b)(6) has also been applied to redact the personal information of the third party individuals that are identified in the various records (for example, the individuals that are identified in the proposals). The personal information that has been redacted in these documents includes information such as names, email addresses, addresses, photographs, and telephone numbers. Release of this information could lead to identification and would clearly constitute an unwarranted invasion of personal privacy for these individuals. They clearly have a protectable privacy interest in this information that would be threatened by disclosure of the information to the Plaintiff. Moreover, release of this information would not shed light on the actions of CBP and there is no public interest in the disclosure of this information. Accordingly, the individuals' right to privacy outweighs whatever public interest, if any, might exist in knowing the information.

   **E.  5 U.S.C. § 552 (b)(7)(C): Records and Information Compiled for Law Enforcement Purposes that Could Reasonably be Expected to Constitute an Unwarranted Invasion of Personal Privacy**

35.     Exemption (b)(7)(C) (5 U.S.C. 552 § (b)(7)(C)) of the FOIA exempts from disclosure law enforcement records or information that could reasonably be expected to constitute an unwarranted invasion of personal privacy. FOIA Exemption (b)(7)(C) applies to civil, criminal, and administrative law enforcement proceedings, and protects, among other information, the identity of law enforcement personnel and third parties referenced in files that are compiled for law enforcement purposes. FOIA Exemption (b)(7)(C) was asserted in this case in addition to FOIA Exemption (b)(6) in order to

protect the identities of CBP employees and other third parties that are identified in the records to protect these individuals from unnecessary questioning and harassment concerning the law enforcement activities in which they are involved.

36.     The CBP records under consideration in this case, consisting of documents pertaining to the procurement and construction of a border wall which is meant to deter illegal crossings and to protect the United States from other outside threats, meet the threshold requirement of being compiled for law enforcement purposes. In this respect, CBP's mission is to protect the borders of the United States against terrorists and the instruments of terror, enforce the customs and immigration laws of the United States, and foster our Nation's economy through lawful international trade and travel. The creation and implementation of effective law enforcement tools is paramount to achieving CBP's mission. The border wall is an essential law enforcement tool. The records in this case constitute law enforcement records because they pertain to the procurement and construction of a border wall that will be utilized in furtherance of CBP's law enforcement mission.

37.     In this case, information redacted pursuant to FOIA Exemption (b)(7)(C) includes the names and other personally identifying information of CBP employees. Examples of such personally identifying information includes telephone numbers and email addresses. FOIA Exemption (b)(7)(C) has also been applied to redact the personal information of the third party individuals that are identified in the various records (for example, the individuals that are identified in the proposals). The personal information that has been redacted in these documents includes information such as names, email addresses, addresses, photographs, and telephone numbers. In applying FOIA Exemption (b)(7)(C)

to withhold this information, CBP notes that the individuals whose privacy would be subject to invasion are identified in the unredacted records and that the invasion of their privacy is unwarranted. There is no public interest to be served by placing the identities or personally identifying information of the CBP employees and other parties before the public.

### F. 5 U.S.C. § 552 (b)(7)(E): Records and Information Compiled for Law Enforcement Purposes That Would Disclose Techniques and Procedures for Law Enforcement Investigations or Prosecutions

38.     Exemption (b)(7)(E) (5 U.S.C. 552 § (b)(7)(E)) of the FOIA exempts from disclosure law enforcement records that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. *See, Fisher v. U.S. Dep't of Justice*, 772 F.Supp. 7 (D.D.C. 1991) (explicitly recognizing categorical protection for law enforcement techniques and procedures), *aff'd*, 968 F.2d 92 (1992); *Keys v. Department of Homeland Security*, 510 F.Supp.2d 121 (D.D.C. 2007); *Hammes v. U.S. Customs Serv.*, 1994 WL 693717 (S.D.N.Y. 1994) (protecting criteria used to determine which passengers to stop and examine). FOIA Exemption (b)(7)(E) is designed to provide categorical protection for law enforcement techniques and procedures. *See, Beck v. U.S. Dep't of the Treasury*, No. 88-493 (D.D.C. 1989), *aff'd*, 949 F.2d 1563 (D.C. Cir. 1992) (approving nondisclosure of certain documents because disclosure would reveal surveillance techniques used by Customs, as well as why certain individuals were contacted with regard to investigations).

39.     The CBP records under consideration in this case, consisting of documents

22

pertaining to the procurement and construction of a border wall which is meant to deter illegal crossings and to protect the United States from other outside threats, meet the threshold requirement of being compiled for law enforcement purposes.

40.      In this matter, FOIA Exemption (b)(7)(E) has been applied to withhold from disclosure information relating to tactical infrastructure construction plans that could reveal potential strengths or vulnerabilities to violators as well as other sensitive information relating to U.S. Government border facilities and operations. In this respect, an example of the information that is being withheld includes the locations of U.S. Border Patrol forward operating bases and checkpoints which are strategically located for the sustainment of tactical operations. Release of this information could enable individuals to create a blueprint of specific station activity thereby revealing the comparative strengths and weaknesses of various U.S. Border Patrol stations. In addition, tactical infrastructure construction plans that set forth the specific locations of cables, cameras, and other detection technologies have been withheld from disclosure as well as information pertaining to specific fence vulnerabilities and proposed surveillance techniques intended to better deter illegal crossings. An internal risk assessment that was created to analyze the risk associated with the foregoing projects has also been withheld pursuant to FOIA Exemption (b)(7)(E) because the document contains sensitive CBP law enforcement information. The border wall and other tactical infrastructure projects are law enforcement tools that CBP utilizes to enforce the immigration and narcotics laws of the United States as well as to perform its homeland security mission. The information was withheld from disclosure in order to protect sensitive law enforcement information. Release of the information would enable individuals to develop countermeasures to evade

border security measures thereby circumventing the law.

41.     In addition, FOIA Exemption (b)(7)(E) has been applied to withhold internal CBP accounting and data codes from disclosure. This information has been redacted in order to protect CBP's methods for categorizing, identifying, and navigating certain law enforcement records. Release of this information could enable individuals to identify and potentially access law enforcement records and CBP databases without authorization thereby circumventing the law. Therefore, FOIA Exemption (b)(7)(E) was applied to withhold this information from disclosure.

### III. SEGREGABILITY

42.     All information withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable because it is so intertwined with protected material that segregation is not possible or its release would have revealed the underlying protected material. I have reviewed the records that have been released to the Plaintiff in response to this litigation and determined that the released documents are responsive. I have reviewed the documents line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemption could apply, and I am satisfied that all reasonably segregable portions of the relevant records have been released to the Plaintiff in this matter. In my determination, any further release of the exempted materials could reasonably lead to the identification of the individuals or other information that is properly protected by the exemptions asserted.

**JURAT CLAUSE**

I declare under penalty of perjury that the statements made in the forgoing Declaration

are true and correct to the best of my knowledge, information and belief.

Signed this ___9th___ day of ___May___, 2019 in Washington, D.C.


_____

Shari Suzuki, Chief
FOIA Appeals, Policy and Litigation Branch
Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection
U.S. Department of Homeland Security

**<u>EXHIBIT A</u>**

**Vaughn Index for Center for Investigative Reporting v.
United States Customs and Border Protection**

Civil Action No. 18-2901 (BAH)

| Document | Location & Other Document Identifiers | Document Description | Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 1 | Office of Acquisition (OA), U.S. Customs and Border Protection (CBP), Washington, DC | Contract Documents.<br><br>The contract documents contain the "Solicitation, Offer, and Award" documents, with amendments, pertaining to the prototype builds of the border wall. The amendments include various attachments including statements of work, subcontracting plan templates, bond information, best management practice information, and question/answer documents. | 976 | Information withheld in part pursuant to:<br><br>Exemptions (b)(6) and (b)(7)(C) – a minimal amount of information was withheld to protect the names and personally identifying information of CBP employees to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties. Disclosure would constitute a clear invasion of their privacy.  In addition, the names and personally identifying information of third parties was withheld to protect their identity.  Release of their identity would be a clear invasion of privacy.<br><br>Exemption (b)(7)(E) – a minimal amount of information was withheld to protect internal accounting data codes in order to protect CBP's methods for categorizing, identifying, and navigating CBP databases and records.  Release of this information could enable individuals to identify and potentially access law enforcement records and CBP databases without authorization thereby circumventing the law. |
| 2 | Office of Acquisition (OA), U.S. Customs and Border Protection (CBP), Washington, DC | Prototype Site Visit PowerPoint Slides.<br><br>The Prototype Site Visit PowerPoint slides pertain to a construction site visit to San Diego on May 18-19, 2017.  The | 11 | Information withheld in part pursuant to:<br><br>Exemption (b)(7)(E) – information was withheld relating to tactical infrastructure construction plans that could reveal potential strengths or |

2

| | | slides cover various aspects of the visit to include agenda, site overview, security procedures, and staging areas. | | vulnerabilities to violators as well as other sensitive information relating to U.S. Government border facilities and operations.  Releasing this data could enable individuals to develop countermeasures to evade detection thereby circumventing the law. |
|---|---|---|---|---|
| 3 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Contracting Officer Unsigned Documents.

The unsigned contracting officer documents discuss the upper and lower cost ranges that should be incorporated into the border wall solicitations in order to encourage as many offerors as possible to submit proposals.  In addition, the documents address labor disputes relative to construction of the border wall. | 2 | Documents withheld pursuant to:

Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting, procurement, and construction process.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process.  Moreover, release could chill open and frank discussions among CBP employees. |
| 4 | Office of Acquisition (OA), U.S. Customs and Border Protection (CBP), Washington, DC | Letters to submitters.

The two, one-page form letters which informed submitters that their proposals were deemed noncompliant. | 2 | The two, one-page letters were released without redaction. |
| 5 | Office of Acquisition (OA), U.S. Customs and Border Protection (CBP), Washington, DC | Question/Instruction Document.

The one-page document sets forth guidance for offerors to consider when presenting their border wall prototype proposals.  The document contains design, technical management, and time allotment considerations. | 1 | The one-page document was released without redaction. |

3

| 6 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Interagency Acquisitions Supplement. Determination and Findings.  Authority to Enter into an Interagency Acquisition Under the Economy Act.<br><br>The unsigned documents set forth certain findings and opinions regarding interagency acquisitions and border infrastructure.  The documents contain estimated timeframes and costs. | 2 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical with respect to interagency acquisitions as part of administering the border wall contracting, procurement, and construction process.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process.  Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names of CBP employees were withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 7 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Determination of Best Procurement Approach for Assisted Acquisitions.<br><br>The unsigned documents set forth findings and opinions regarding the best approach for assisted acquisitions.  In this respect, the documents specifically contains findings, alternatives, advantages, disadvantages, and recommendations developed by CBP employees as CBP administers the border | 6 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical with respect to assisted acquisitions as part of administering the border wall contracting, procurement, and construction process.  Releasing |

4

| | | infrastructure contracting, procurement, and construction process. | | these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process. Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names of CBP employees were withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties. Disclosure would constitute a clear invasion of their privacy. |
|---|---|---|---|---|
| 8 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Terms and Conditions for Assisted Acquisitions.<br><br>The unsigned documents set forth terms and conditions governing assisted acquisitions. With respect to terms and conditions and assisted acquisitions, the documents contains employee input pertaining to purpose, scope, description of products or services to be acquired, period of agreement, roles of servicing and requesting agency, billing and payment terms, termination and dispute guidance, and amendments. | 9 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical with respect to assisted acquisitions as part of administering the border wall contracting, procurement, and construction process. Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process. Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names of CBP employees were withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of |

| | | | | their duties.  Disclosure would constitute a clear invasion of their privacy. |
|---|---|---|---|---|
| 9 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Interagency Agreement Statement of Work Between U.S. Customs and Border Protection and U.S. Army Corps of Engineers.

The unsigned 10-page statement of work pertains to construction of border infrastructure.  The documents set forth the objective/purpose of the statement of work, scope, requirements, an estimated cost table, and performance and funding provisions. | 10 | Documents withheld pursuant to:

Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical with respect to interagency statements of work as part of administering the border wall contracting, procurement, and construction process.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process.  Moreover, release could chill open and frank discussions among CBP employees.

Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees were withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy.

Exemption (b)(7)(E) – internal accounting and funding codes were withheld in order to protect CBP's methods for categorizing, identifying, and navigating CBP databases and records.  Release of this information could enable individuals to identify and potentially access law enforcement records and CBP databases without authorization thereby circumventing the law. |

| 10 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Border Wall Funding Documents.<br><br>The four pages of documents are spreadsheets that set forth proposed levels of funding for various aspects of the border wall and other infrastructure projects.  Page 4 indicates that the infrastructure and technology investments are "notional." | 4 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of funding calculations, evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting, procurement, and construction process.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process.  Moreover, release could chill open and frank discussions among CBP employees. |
| 11 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Proposed Reponses to Congressional Questions.<br><br>The six pages of documents contain proposed responses to questions presented by CBP's Office of Congressional Affairs (OCA) and Members of Congress.  The documents contain information about border wall and other infrastructure construction projects, budget issues relating to the projects, U.S. Border Patrol facility information including forward operating base data, and staff opinions on these matters. | 6 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall and infrastructure contracting, procurement, and construction process.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process.  Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemption (b)(7)(E) – specific information was |

| | | | | |
|---|---|---|---|---|
| | | | | withheld pertaining to U.S. Border Patrol forward operating bases, which are forward facilities in remote locations for the sustainment of sector and/or station tactical operations.  Release of this information could enable individuals to create a blueprint of specific station activity thereby revealing the comparative strengths and weaknesses of various U.S. Border Patrol stations. This information could enable individuals to develop countermeasures to evade border security measures thereby circumventing the law. |
| 12 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Border Wall/Barrier System Communication and Outreach Strategy and Plan Outline.<br><br>The seven pages of documents set forth a proposed comprehensive and coordinated communication and outreach strategy regarding the border wall.  The documents provide the background of the project and establish objectives and goals.  The pages are clearly marked with "draft." | 7 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of a draft that CBP employees created as part of developing the border wall communication and outreach strategy.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the border wall communication and outreach strategy. Moreover, release could chill open and frank discussions among CBP employees.<br><br>In addition, "draft" documents are a category of document that is particularly likely to be exempt under the deliberative process privilege.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names of CBP employees were withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |

| 13 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Internal White Paper Documents Pertaining to Acquiring Prototype Wall Designs.<br><br>The five pages of documents set forth the intent of the requests for proposals (RFP's), evaluation considerations, and other factors relating to the award of prototype contracts. The documents are unsigned. | 5 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical with respect to the RFP's as part of administering the border wall contracting, procurement, and construction process. Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process. Moreover, release could chill open and frank discussions among CBP employees. |
| 14 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Draft Schedules.<br><br>Two pages of draft schedules that set forth tentative timeframes for events related to the border wall prototype RFP's. The draft schedules include timeframes for RFP development, award, and review. | 2 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of a draft timeline that was created as part of the RFP process but never finalized. Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process. Moreover, release could chill open and frank discussions among CBP employees.<br><br>In addition, "draft" documents are a category of document that is particularly likely to be exempt under the deliberative process privilege. |

| | | | | |
|---|---|---|---|---|
| | | | | Exemptions (b)(6) and (b)(7)(C) – the names of CBP employees were withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 15 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Internal Risk Register.

The internal risk register identifies and describes risk associated with tactical infrastructure replacement.  In order to manage risk, the register includes a number of data fields including risk category, probability of risk, risk level, dollar impact, and milestone affected. | 1 | Document withheld pursuant to:

Exemption (b)(5) deliberative process privilege – the document was withheld from disclosure because the information in the document is predecisional and deliberative in that it consists of evaluations, calculations, opinions, observations, and other findings that CBP employees deemed critical with respect to risk management as part of administering the border wall and infrastructure contracting, procurement, and construction process.  Releasing this document could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process.  Moreover, release could chill open and frank discussions among CBP employees.

Exemptions (b)(6) and (b)(7)(C) – the name of a CBP employee was withheld to protect the CBP employee from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy.

Exemption (b)(7)(E) – specific information was withheld pertaining to the allocation of U.S. Border Patrol resources during the construction of infrastructure.  Release of this information could |

| | | | | |
|---|---|---|---|---|
| | | | | enable individuals to create a blueprint of specific station activity during construction thereby revealing the comparative strengths and weaknesses of various U.S. Border Patrol stations. This information could enable individuals to develop countermeasures to evade border security measures thereby circumventing the law. |
| 16 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Border Patrol Facilities and Tactical Infrastructure & Air and Marine PMO Wall Program – Project Requirements Document.<br><br>The 33 pages of documents set forth preliminary considerations for the border wall infrastructure project.  In this respect, the documents contain business partner requirements, objectives, diagrams, exhibits, and estimates that pertain to the wall and other tactical infrastructure along the border.  The documents describe in detail certain weaknesses in current border infrastructure that potential upgrades will cure. | 33 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the documents were withheld from disclosure because the information in the documents is predecisional and deliberative in that it consists of evaluations, opinions, estimates, observations, and other findings that CBP employees deemed critical with respect to border infrastructure project requirements as part of administering the border wall and infrastructure contracting, procurement, and construction process.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process.  Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names of CBP employees were withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy.<br><br>Exemption (b)(7)(E) – specific information was withheld pertaining to the allocation of U.S. Border Patrol resources during the construction of |

| | | | | |
|---|---|---|---|---|
| | | | | border infrastructure.  Release of this information could enable individuals to create a blueprint of specific station activity during construction thereby revealing the comparative strengths and weaknesses of various U.S. Border Patrol stations. This information could enable individuals to develop countermeasures to evade border security measures thereby circumventing the law. |
| 17 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | CBP email dated May 22, 2017 (Subject: Prototype Testing Estimate).<br><br>One-page email sets forth an estimate of the dollar amount that will be required for prototype testing. | 1 | Document withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the email was withheld from disclosure because the information in the email is predecisional and deliberative in that it consists of evaluations and estimates regarding prototype testing.  Releasing this information could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding these decisions.  Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees was withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 18 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | CBP email dated May 22, 2017 (Subject: HSBP1017R0022 A009 Q&A.docx).<br><br>One-page email pertains to the effect of site allotment on pricing. | 1 | Document withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the email was withheld from disclosure because the information in the email is predecisional and deliberative in that it consists of internal CBP deliberations pertaining to the effect of |

| | | | | |
|---|---|---|---|---|
| | | | | construction site allotment on pricing.  Releasing this information could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding these decisions.  Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees was withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 19 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | CBP email dated March 17, 2017 (Subject: RFP's are Posted)<br><br>One-page email announces that the RFP's are posted. | 1 | Information withheld pursuant to:<br><br>Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees was withheld in the email to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 20 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | CBP email chain dated March 27, 2017, through March 28, 2017 (Subject: CBP News Release: // Wall Street Journal).<br><br>Three pages of emails contain internal discussions pertaining to bonding requirements and internal deliberations on how to handle border wall bonding issues. | 3 | Documents withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the emails were withheld from disclosure because the information in the emails is predecisional and deliberative in that it consists of internal CBP deliberations pertaining to bonding requirements with respect to construction of the border wall. Releasing this information could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding these decisions. |

13

| | | | | Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees was withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 21 | Office of Facilities and Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Draft RFP Language with Comments.<br><br>The seven pages of documents contain draft language for the RFP's with editorial comments.  The editorial comments include questions, suggestions, and clarifications regarding the RFP's. | 7 | Documents withheld pursuant to:<br><br>Exemption (b)(5) – the documents were withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the documents is predecisional and deliberative in that it consists of draft language that CBP employees created as part of developing the border wall RFP's.  Releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the border wall RFP's.  Moreover, release could chill open and frank discussions among CBP employees.<br><br>In addition, "draft" documents are a category of document that is particularly likely to be exempt under the deliberative process privilege.<br><br>Exemptions (b)(6) and (b)(7)(C) – the name of a CBP employee was withheld to protect the CBP employee from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 22 | Office of Facilities and | Wall Outreach and Communications | 1 | The document was released without redaction. |

| | Asset Management (OFAM), U.S. Customs and Border Protection (CBP), Washington, DC | Meeting Agenda.<br><br>The one-page document sets forth the agenda for a meeting on April 10, 2017. | | |
|---|---|---|---|---|
| 23 | Office of Information and Technology (OIT), U.S. Customs and Border Protection (CBP), Washington, DC | CBP email chain dated March 21, 2017 (Subject: RE: comment and review for both border wall solicitations, done by internal government employee with MILCON experience).<br><br>The six pages of emails contain internal government discussions pertaining to the government procurement process. | 6 | Documents withheld pursuant to:<br><br>Exemption (b)(5) – the six pages of emails were withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the emails is predecisional and deliberative in that it consists of internal government deliberations pertaining to the procurement process, in particular with respect to the border wall RFP process.  Releasing this information could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding these decisions.  Moreover, release could chill open and frank discussions among CBP employees.<br><br>Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of U.S. Government employees were withheld to protect the employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 24 | Office of Information and Technology (OIT), U.S. Customs and Border Protection (CBP), Washington, DC | CBP email dated March 23, 2017 (Subject: RE: Solicitation No.: HSBP1017R0022 (Requisition No.: 20098173)/Solicitation No.: HSB1017R0023 (Requisition No.: 20098235); [Questions2]).<br><br>One-page email containing CBP | 1 | Document withheld pursuant to:<br><br>Exemption (b)(5) deliberative process privilege – the email was withheld because the information in the email is predecisional and deliberative in that it consists of internal CBP deliberations pertaining to the circumstances under which extensions to satisfy RFP requirements should be granted. |

| | | employee opinions regarding the circumstances under which an extension to satisfy RFP requirements should be granted. | | Releasing this information could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding these decisions. Moreover, release could chill open and frank discussions among CBP employees.

Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees was withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy. |
| 25 | Office of Information and Technology (OIT), U.S. Customs and Border Protection (CBP), Washington, DC | CBP Emails.

Emails provided by OIT which were sent to and from BorderWallDesignBuild@cbp.dhs.gov. The emails that were provided contain questions or concerns regarding CBP's RFP's along with the responses that were provided to those questions or concerns. Of the 182 pages of emails, 110 pages were released with redactions, and 72 pages were released without redaction. | 182 | Information withheld pursuant to:

Exemption (b)(4) – a small amount of information was withheld pursuant to Exemption (b)(4) in order to protect certain commercial information that is exempt from disclosure.

Exemption (b)(5) deliberative process privilege – information was withheld in the emails to protect information pertaining to internal evaluations and opinions regarding the RFP's that CBP employees deemed critical as part of administering the border wall RFP process.  Releasing this information in the emails could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the border wall RFP process.  Moreover, release could chill open and frank discussions among CBP employees.

Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees was withheld to protect the CBP |

| | | | | employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy.  In addition, the names and personally identifying information of third parties was withheld to protect their identity.  Release of their identity would be a clear invasion of privacy. |
|---|---|---|---|---|
| 26 | Office of Information and Technology (OIT), U.S. Customs and Border Protection (CBP), Washington, DC | Proposals.<br><br>There were 152 proposals provided by OIT that were sent to BorderWallDesignBuild@cbp.dhs.gov. The proposals were submitted to this email address in response to the CBP RFP's.  The proposals consisted of proposed contracts, concept papers, cost estimates, statements of qualifications, summary matrix documents, drawings, blueprints, personal statements, bonding information, risk and mitigation charts, capability statements, and statements of experience. | 5482 | Documents withheld pursuant to:<br><br>Exemption (b)(3) -  proposals in the possession or control of a Federal agency were specifically prohibited from being disclosed to any person under the FOIA pursuant to the National Defense Authorization Act of 1997 (codified at 41 U.S.C. § 4702b (m) and currently located at 41 U.S.C. § 4702 (b)).  Under 41 U.S.C. § 4702 (c), Federal agencies are prohibited from releasing any such proposals unless a proposal is set forth or incorporated by reference in a contract entered into between the agency and the contractor that submitted the proposal.  Pursuant to 41 U.S.C. §4702 (a), "proposal" is defined as a proposal, including a technical, management, or cost proposal, submitted by a contractor in response to the requirements of a solicitation for a competitive proposal.  The documents that are being withheld pursuant to Exemption (b)(3) in this case are considered to be proposals under the statute.  In addition, CBP did not select these documents for inclusion in a contract or otherwise incorporate them into a contract by reference.  Therefore, the proposal documents were withheld under Exemption (b)(3).<br><br>Exemption (b)(4) – documents were withheld pursuant to Exemption (b)(4) in order to protect |

information the release of which would cause substantial harm to the competitive positions of the various submitters.  Examples of information that has been withheld pursuant to Exemption (b)(4) is data pertaining to contractor resources dedicated to construction, contractor border security capabilities, company financial data, and other contract management information that is unique to each submitter such as specific measures undertaken to enhance contract performance.  The information that was withheld is clearly commercial and was obtained by a "person" within the meaning of Exemption (b)(4).  In determining that release of the information would cause substantial harm to the competitive positions of the submitters, it was noted that releasing the information would reveal the competitive vulnerabilities and operational capabilities of various firms.  This would allow competitors to exploit this information for their benefit by enhancing their ability to obtain future government contracts through altering their business strategies.

Exemptions (b)(6) and (b)(7)(C) – the names and personally identifying information of CBP employees was withheld to protect the CBP employees from unnecessary, unofficial questioning and harassment as to the conduct of their duties.  Disclosure would constitute a clear invasion of their privacy.  In addition, the names and personally identifying information of third parties was withheld to protect their identity.  Release of their identity would be a clear invasion of privacy.

Exemption (b)(7)(E) – a small amount of specific information pertaining to the actual border wall was withheld from disclosure.  This information

18

| | | | | addresses detection and other wall capabilities. Release of this information would enable individuals to develop countermeasures to evade border security measures thereby circumventing the law. |
|---|---|---|---|---|

# **EXHIBIT B**



U.S. Department of Homeland Security
Washington, DC 20229

**U.S. Customs and Border Protection**

DIS-3 OT:RR:RDL:FAPL
CBP-AP-2018-006188 EAC

SEP 1 0 2018

Mr. Michael Corey
Reveal
1400 65th St.
Suite 200
Emeryville, CA 94608

Re:  Freedom of Information Act Appeal of File No. CBP-2017-051381

Dear Mr. Corey:

This is in reply to a letter, with exhibits, dated October 17, 2017, to U.S. Customs and Border Protection ("CBP") which was received by our office on October 27, 2017.  The letter was submitted by Attorney D. Victoria Barenetsky on your behalf and pertains to a Freedom of Information Act ("FOIA") (5 U.S.C. § 552) request you filed with CBP.  As you filed the initial FOIA request and maintain a *FOIAOnline* account linked to this case, we are directing our response to this matter to your attention.

The above-referenced letter appeals the August 3, 2017, response of the CBP FOIA Division to your April 24, 2017, FOIA request for certain records.  In this respect, you requested:

> Any and all submissions, records, documents, white papers, memoranda and/or alike material related to border fence/border wall contract proposals, i.e. HSBP1017R0022, HSBP1017R0023, 2017-JC-RT-0001 and 2017-DHS-OCPO-RFI-0001 from the date of posting to the present.  Relevant records include but are not limited to:- Phase I proposal submissions – Notifications sent to submitters of proposals, whether successful or no – Phase II proposal submissions – All schedules, calendars and itineraries related to prototype presentations – Any and all recordings of prototype presentations – Any maps, GIS data, geotechnical data or site conditions information regarding the prototype site – Any materials related to scoring proposals and/or testing of prototypes and/or mockups – Results and/or scoring of prototypes and mockups – Border Patrol-approved design standards for fence/wall – Aerial and/or satellite photos of the prototype location – Evaluations, assessments, analyses, summaries, reviews and/or reports regarding the bid, submission, evaluation and prototype process.

In response to your request, the FOIA Division stated that a search of CBP databases produced records that were responsive to your request.  However, the FOIA Division stated that the responsive records were properly withheld from disclosure pursuant to FOIA Exemption (b)(4) (5 U.S.C. § 552 (b)(4)).

You appeal the FOIA Division's determination to withhold the responsive documents from disclosure.  Your submission states that there are no trade secrets in the requested documents which should be withheld pursuant to Exemption (b)(4).  Moreover, your appeal asserts that the Requests for Proposals ("RFP's") repeatedly indicated that any information gathered through the proposal process would be in the public domain and not be considered confidential.  Your appeal highlights specific portions of various CBP documents to support this position.[1]  Portions of the specifically-identified documents state "the Government is not open to any form of proprietary design or equipment," "No parts of this contract are classified," and, "All such materials are to remain within the public domain."  For these reasons, your appeal argues that the documents also cannot be considered commercial or financial information that is privileged or confidential under Exemption (b)(4).  Lastly, you appeal the FOIA Division's determination to withhold the records in their entirety, stating that the decision to withhold the records in their entirety was overbroad and that there should be segregable information in the documents which should be released.

In order to process your appeal, we considered the parameters of your initial request, the FOIA Division's response to your initial request, and the arguments set forth in your appeal.  As indicated above, you appeal the FOIA Division's determination stating that there should be segregable information in the documents that were withheld in their entirety.  We have reviewed responsive records that were provided by the CBP Office of Facilities and Asset Management ("OFAM"), CBP Office of Information Technology ("OIT"), and CBP Office of Acquisition ("OA").  We note that OFAM, OIT, and OA are within CBP Enterprise Services and that these were the most appropriate components to contact within CBP concerning your FOIA appeal.  The search by these offices produced 6,762 pages of responsive documents.  The documents consist of records such as contractor bid and proposal documents, an interagency acquisitions supplement draft document, best procurement approach for assisted acquisition draft document, terms and conditions for assisted acquisitions draft, border wall funding draft spreadsheets, draft interagency agreements, proposed responses to U.S. Senator questions with edits, border wall communication and outreach strategy plan and outline, internal white paper draft documents pertaining to acquiring prototype wall designs, draft schedules pertaining to border wall matters, internal risk registers, U.S. Border Patrol facilities and tactical infrastructure and Air and Marine PMO wall project requirements document, maps with proposed tactical infrastructure projects, contracts, amendments, and various emails.  We note that a number of the documents (for example, the contract and amendment documents) are publicly available on the Federal Business Opportunities website at www.fbo.gov and have also been provided as attachments to your appeal.  Therefore, some of the documents that are being released to you with this decision may be duplicative of what you already have.  However, we have processed all of the documents that were provided by OFAM, OIT, and OA in order to ensure a thorough review of your appeal was completed.

Upon our review of the 6,762 pages of documents under consideration in this case, we have determined that 5,588 of the pages will be withheld from disclosure pursuant to FOIA Exemptions (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) (5 U.S.C. §§ 552 (b)(3),

---

[1] The documents are set forth as Exhibits in your submission.  The Exhibits consist of Standard Form 30 (Amendment of Solicitation/Modification of Contract) amendments in which CBP responded to questions pertaining to the RFP's or incorporated revisions to the solicitations that were made as a result of the answers to certain questions.

2

(b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E)).  In addition, we have determined that 155 pages of documents will be released to you with redactions made pursuant to FOIA Exemptions (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  Lastly, we have determined that the remaining 1,019 pages of documents will be released to you without redaction.  Below is a discussion of how we applied the FOIA Exemptions to the documents that are under consideration in this case.

The FOIA "was enacted to facilitate public access to Government documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991).  The predominant objective of the FOIA is the disclosure of executive branch information that is maintained by the Federal Government to the public unless the requested records contain certain categories of information that are exempt or excluded from compelled disclosure.  FOIA provides nine exemptions and three exclusions pursuant to which an agency may withhold requested information.  Thus, the public's right to government information is not without limits.  However, FOIA exemptions are to be narrowly construed, and the burden is on the government to demonstrate that the materials sought may be withheld due to one or more of the exemptions.  In any event, the FOIA provides that any non-exempt information that is reasonably segregable from the requested records must be disclosed.  The segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption.  See, Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F. 3d 1022, 1027 (D.C. Cir. 1999).

Exemption (b)(3) of the FOIA protects information specifically exempted from disclosure by another statute, if the statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matters to be withheld.  In applying Exemption (b)(3), we initially note that The Court of Appeals for the District of Columbia Circuit has held that records may be withheld under the authority of another statute pursuant to Exemption (b)(3) "if – and only if – that statute meets the requirements of Exemption 3, including the threshold requirement that it specifically exempt matters from disclosure." Reporters Comm. for Freedom of the Press v. DOJ, 816 F.2d 730, 734 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989).  In Reporters Committee, the D.C. Circuit further stated that "[a] statute that is claimed to qualify as an Exemption 3 withholding statute must, on its face, exempt matters from disclosure.  [The court] must find a congressional purpose to exempt matters from disclosure in the actual words of the statute (or at least in the legislative history of FOIA) – not in the legislative history of the claimed withholding statute, nor in an agency's interpretation of the statute." Reporters Comm., 816 F.2d at 735; see also, Pub. Citizen, 533 F.3d at 813-14; Nat'l Ass'n of Home Builders, 309 F.3d at 37 (finding that statute failed to qualify as withholding statute under Exemption (b)(3)).

Proposals in the possession or control of a Federal agency were specifically prohibited from being disclosed to any person under the FOIA pursuant to The National Defense Authorization Act of 1997 (codified at 41 U.S.C. § 253b(m) and currently located at 41 U.S.C. § 4702(b)).  Under 41 U.S.C. § 4702(c), Federal agencies are prohibited from releasing any such proposals unless a proposal is set forth or incorporated by reference in a contract entered

into between the agency and the contractor that submitted the proposal.  "Proposal" is defined under the statute as a proposal, including a technical, management, or cost proposal, submitted by a contractor in response to the requirements of a solicitation for a competitive proposal.  41 U.S.C. § 4702(a).

In this case, the submissions that were submitted in response to the RFP's for prototype builds of the border wall are considered to be proposals as defined under 41 U.S.C. § 4702(a). In this respect, the submissions contain concept papers, proposed contracts, financial information, technical diagrams, and other related information.  We also note that the proposals that were submitted were not selected by CBP for inclusion in a contract or otherwise incorporated into a contract by reference.  As noted above, any such proposals are clearly prohibited from release by statute.  See also, Hornbostel v U.S. Dep't of the Interior, 305 F. Supp. 2d 21, 30 (D.D.C. 2003), summary affirmance granted, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004).  Therefore, we have applied Exemption (b)(3) to withhold 5,482 pages of these documents from release.

Exemption (b)(4) of the FOIA protects trade secrets and commercial or financial information obtained from a person [that is] privileged and confidential.  Redactions have been made pursuant to Exemption (b)(4) in this case to withhold information pertaining to contractor resources that are dedicated to construction, contractor border security capabilities, financial data, and other contract management information that is unique to each submitter such as specific measures undertaken to enhance overall contract performance.  We note that Exemption (b)(4) has been applied to portions of the documents that are being released to you as well as to 4,999 pages of the documents that are being withheld in their entirety.  Because the information that is being withheld does not relate to trade secrets, Exemption (b)(4) will only apply to: "(1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged and confidential."  Watkins v. Customs & Border Protection, 2011 U.S. App. LEXIS 9443 at 9 (9th Cir. May 6, 2011).

As applied to the instant case, the information redacted pursuant to Exemption (b)(4) is clearly commercial.  Although not all information submitted to the government by a commercial entity will be protected by Exemption (b)(4), the courts interpret the term broadly and extend the exemption to cover any information in which a third party has a "commercial interest."  Baker & Hostetler LLP v. Department of Commerce, 473 F.3d 312, 319 (D.C. Cir. 2006).

Similarly, the information at issue was obtained by a "person," satisfying the second prong of Exemption (b)(4)'s requirements.  Courts also interpret this prong broadly so as to include any information submitted by "an individual, partnership, corporation, association or public or private organization other than the agency."  Nadler v. FDIC, 92 F. 3d 93, 95 (2d Cir. 1996).  Here, the redacted information was provided to CBP by private parties which each clearly fit the description of "person" within the meaning of Exemption (b)(4).

We must next determine whether the redacted information is considered to be "privileged and confidential" within the meaning of Exemption (b)(4).  Whether information submitted to a federal agency is considered "confidential" under Exemption (b)(4) depends on

4

whether the information was a required or voluntary submission to the government. If the government required submission of the information, the exemption will only protect commercial or financial material that is likely to: "(1) impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained." National Parks and Conservation Association v. Morton, 498 F.2d 765, 770 (D.C. Cir 1974). In contrast, Exemption (b)(4) offers broader protection for any financial or commercial information provided to the government on a voluntary basis. In such situations, information will be protected in all cases so long as "it is of a kind that a provider would not customarily release to the public." Critical Mass Energy Project v. Nuclear Regulatory Commission, en banc, 975 F.2d 871, 872 (D.C. Cir. 1992).

Here, each party voluntarily submitted a proposal in response to the RFP's in order to be awarded a contract by CBP to build a prototype of the border wall. However, CBP *required* the submission of the information at issue in order to adequately evaluate the proposals and ultimately award the contracts to build the prototypes of the wall. Therefore, because CBP required the submissions, in order to qualify for protection under Exemption (b)(4), disclosure of the information must be likely to (1) impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained.

In this case, we have determined that release of the information that is being withheld would cause substantial harm to the competitive positions of the submitters. In this regard, release of the information would clearly reveal the competitive vulnerabilities and operational capabilities of various firms. Releasing the information that is being withheld would enable competitors to exploit this information for their benefit by enhancing their ability to obtain future government contracts by formulating and altering their business strategies. This would thereby substantially harm the competitive positions of the CBP contractors by undercutting their ability to obtain future contracts. Accordingly, we determine that this information is exempt from disclosure pursuant to Exemption (b)(4).

In applying Exemption (b)(4), we have considered your argument that the RFP's repeatedly indicated that any information gathered through the proposal process would be in the public domain and not be considered confidential. We do not believe the specific provisions you highlighted are applicable to this FOIA matter. For example, you have highlighted only a specific portion of one document that states "All such materials are to remain in the public domain." The clause you have cited states, in part, that:

**Article C.13 Special Considerations**

Neither the Contractor nor any subcontractor or representative thereof shall release or publish any sketch, photograph, report or other material of any nature derived or prepared under and resulting task order without specific written permission of the Contracting Officer except as specifically provided in the SOW.

Copyright shall not be claimed by the Contractor for any materials produced under any

resulting task order. All such materials are to remain within the public domain.

As stated above, we do not believe this provision or the others that you have highlighted in the attachments to your appeal are applicable to this case.

Exemption (b)(5) of the FOIA protects inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. The statutory language unequivocally incorporates all civil discovery rules into FOIA Exemption (b)(5). The three primary, most frequently invoked privileges that have been held to be incorporated into Exemption (b)(5) are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

The most commonly invoked privilege incorporated within Exemption 5 is the deliberative process privilege, the general purpose of which is to "prevent injury to the quality of agency decisions." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). Specifically, three policy purposes consistently have been held to constitute the basis for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. See, e.g., Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). Traditionally, the courts have established two fundamental requirements, both of which must be met, for the deliberative process privilege to be invoked. Petroleum Info. Corp. v. United States Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992). First, the communication must be predecisional, and second, the communication must be deliberative in that it makes recommendations or expresses opinions on legal or policy matters. Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

As applied, we initially note that the information withheld pursuant to the Exemption (b)(5) deliberative process privilege includes documents such as the interagency acquisitions supplement draft document, best procurement approach for assisted acquisition draft document, terms and conditions for assisted acquisitions draft document, border wall funding draft spreadsheets, draft interagency agreements, proposed responses to U.S. Senator questions with edits, border wall communication and outreach strategy plan and outline, internal white paper draft documents pertaining to acquiring prototype wall designs, draft schedules pertaining to border wall matters, internal risk registers, U.S. Border Patrol facilities and tactical infrastructure and Air and Marine PMO wall project requirements document, maps with proposed tactical infrastructure projects, and portions of certain emails. In determining that this information is properly withheld from disclosure pursuant to Exemption (b)(5), we note that the initial consideration that must be made is whether the information being withheld is of the type intended to be covered by the phrase "inter-agency" or "intra-agency memorandums." The information being withheld pursuant to Exemption (b)(5) in this case was created by CBP employees in order to develop, examine, or propose CBP policies relating to the border wall. Therefore, the initial threshold requirement of Exemption (b)(5) is met in this case.

6

Having satisfied the threshold requirement of Exemption (b)(5), we must next consider whether the information that is being withheld is considered both predecisional and deliberative in nature. In considering this issue, we note that the Supreme Court has held that "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions…". Sears, 421 U.S. at 151 n. 18. As such, courts have held that Exemption (b)(5) can be applicable if documents are generated as part of such a continuing process of decision making. See, e.g., Cassad v HHS, 301 F.3d 1247, 1252 (10th Cir. 2002). Categories of documents that are routinely protected by the deliberative process privilege are "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 150. They are protected because, by their very nature, their release would likely "stifle honest and frank communication within the agency." Coastal States, 617 F.2d at 866. To this end, it has been recognized that "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." See, Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001).

In the instant case, we find that the information that is being withheld pursuant to Exemption (b)(5) is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees have deemed critical as part of administering the evolving and ongoing border wall construction process. We have determined that these documents are predecisional and deliberative in nature in that they contain information under consideration by CBP as the agency moves towards a decision on how to proceed with this process. In this regard, the authors of the documents are selecting specific facts out of a larger group of facts and this constitutes an exercise of judgment by CBP personnel and this very act is deliberative in nature. Release of the documents and information would reveal how CBP employees are prioritizing different facts and what facts they consider to be important in the process. In addition, releasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions the agency may take regarding the ongoing construction process. Moreover, release of these documents could chill open and frank discussions among CBP employees. We specifically note that the documents contain employee findings; alternatives/advantages/disadvantages/recommendations for different construction and procurement scenarios; suggested text proposals for agreements and other documents; internal funding calculations; employee edits; proposed construction schedules; proposed courses of action; and, analyses of proposed tactical infrastructure projects. The act of distilling the evidence, which involves separating the significant facts from the insignificant facts, constitutes an exercise of judgment by agency personnel. Such selective facts are therefore entitled to the same protection as afforded to purely deliberative materials, as their release would permit indirect inquiry into the mental processes of employees and expose agency deliberations. If disclosed, this information could result in confusion regarding reasons and rationales that are not ultimately the grounds for the agency's actions and would chill open and frank discussions among those CBP employees that are involved in the border wall construction and contracting processes. This deliberative and pre-decisional information is precisely the type of material that the exemption was intended to cover as the information

7

reflects agency deliberations and is therefore properly withheld from disclosure pursuant to FOIA Exemption (b)(5).

In addition, we also note that courts have found that "drafts" are a category of document that is particularly likely to be found exempt under the deliberative process privilege. Abdelfattah v. DHS, 488 F.3d 178, 183 (3d Cir. 2007); Gerstein v. CIA, No. 06-4643, 2008 WL 4415080, at *16 (N.D. Cal. Sept. 26, 2008) (protecting draft letters); Donham v. U.S. Forest Service, No. 07-111, 2008 WL 2157167, at *5 (S.D. Ill. May 21, 2008) (finding draft documents to be "precisely the kind of documents that Exemption 5 and the deliberative process privilege seek to protect from disclosure"); Pub. Employees for Envtl Responsibility v. Bloch, 532 F. Supp. 2d 19, 22 (D.D.C. 2008) (protecting draft "position descriptions"); Ebersole v. United States, No. 06-2219, 2007 WL 2908725, at *5 (D. Md. September 24, 2007) (protecting draft memorandum of understanding, noting that draft "does not memorialize a final agency decision"); Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (protecting draft agreement and draft of letter from Secretary of Commerce). Therefore, we find that the draft documents are properly withheld from disclosure pursuant to Exemption (b)(5).

Exemption (b)(6) permits the Government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. Dep't of the Air Force v. Rose, 425 U.S. 352 (1976). It must be ascertained whether a protectible privacy interest exists that would be threatened by disclosure. In order to compel release of materials, there must be a public interest because "something, even a modest privacy interest outweighs nothing every time." Cappabianca v. Comm'r, U.S. Customs Serv., 847 F. Supp. 1558 (M.D. Fla. 1994).

In this case, we have determined that you have no genuine and significant interest in the names and other identifying information (for example, telephone numbers, email addresses, photographs) of the Federal employees and other third-parties that are located in the documents, nor have you asserted any public interest in the disclosure of this information. Further we find that the individual's right to privacy outweighs whatever public interest, if any, might exist in knowing information such as their identity. Accordingly, Exemption (b)(6) has been applied to withhold this information from disclosure in the documents that are being released to you as well as in the documents that are being withheld from disclosure.

In addition to Exemption (b)(6), the information identifying the Federal employees and other third parties is also withheld under Exemption (b)(7)(C). Exemption (b)(7)(C) provides protection for personal information in law enforcement records, the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The names of Federal employees as well as third-party individuals mentioned in law enforcement records are exempt from disclosure pursuant to Exemption (b)(7)(C). This exemption is designed to protect, among other interests, the interests of law enforcement personnel from "harassment and annoyance in the conduct of their official duties and in their private lives" which could

conceivably result from public disclosure of their identity.  Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978).  In addition, the exemption is also intended to protect third-parties whose identities are revealed in law enforcement files from comment, speculations, and stigmatizing connotation associated with being identified in a law enforcement record.  Lesar v. United States, 636 F.2d 472 (D.C. Cir. 1980).

The documents under consideration in this case relate to construction of a border wall which is meant to deter illegal crossings and to protect the United States from other outside threats.  Therefore, the records are considered law enforcement records compiled in furtherance of CBP's law enforcement mission.  Moreover, the individuals whose privacy would be subject to invasion are identified in the various documents and such invasion of privacy is unwarranted.  There is no public interest to be served by placing the identities or personally identifying information of the individuals before the public.  Therefore, Exemption (b)(7)(C) has also been properly applied throughout the records to withhold this information from disclosure.

Exemption (b)(7)(E) exempts from disclosure information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  See, Fisher v. U.S. Dep't of Justice, 772 F. Supp. 7 (D.D.C. 1991) (explicitly recognizing categorical protection for law enforcement techniques and procedures), aff'd, 968 F.2d 92 (1992); and, Hammes v. U.S. Customs Service, 1994 WL 693717 (S.D.N.Y. 1994) (protecting criteria used to determine which passengers to stop and examine).  Exemption (b)(7)(E) is designed to provide categorical protection for law enforcement techniques and procedures.  See, Beck v. U.S. Dep't of the Treasury, No. 88-493 (D.D.C. 1989), aff'd, 949 F.2d 1563 (D.C. Cir. 1992) (approving nondisclosure of certain documents because disclosure would reveal surveillance techniques used by Customs, as well as why certain individuals were contacted with regard to investigations).

In this case, Exemption (b)(7)(E) has been applied to withhold from disclosure sensitive law enforcement information.  The information that is being withheld from disclosure pursuant to FOIA Exemption (b)(7)(E) includes information relating to tactical infrastructure construction plans that could reveal potential strengths or vulnerabilities to violators as well as other sensitive information relating to U.S. Government border facilities and operations.  In this regard, an example of the information that is being withheld includes the locations of U.S. Border Patrol forward operating bases and checkpoints which are strategically located for the sustainment of tactical operations.  In addition, tactical infrastructure construction plans that set forth the specific locations of cables, cameras, and other detection technologies have been withheld from disclosure as well as information pertaining to specific fence vulnerabilities and proposed surveillance techniques intended to better deter illegal crossings.  Internal risk assessments that were developed to analyze the foregoing projects have also been withheld pursuant to Exemption (b)(7)(E) as they discuss sensitive CBP law enforcement information.  In making the determination to withhold this information from disclosure, we note that the border wall and other tactical infrastructure projects are law enforcement tools that CBP utilizes to enforce the immigration and narcotics laws of the United States as well as to perform

its homeland security mission.  The information has been withheld from disclosure in order to protect this sensitive law enforcement information.  Release of the information would enable individuals to develop countermeasures to evade border security measures thereby circumventing the law.  Also, internal CBP accounting and data codes have been withheld from disclosure pursuant to Exemption (b)(7)(E).  This information has been redacted in order to protect CBP's methods for categorizing, identifying, and navigating certain law enforcement records.  Release of this information could enable individuals to identify and potentially access law enforcement records and CBP databases without authorization thereby circumventing the law.  Therefore, Exemption (b)(7)(E) has been applied to certain documents to withhold this information from disclosure.

The Freedom of Information Act, particularly Title 5 U.S.C. § 552 (a)(4)(B), provides you with the opportunity to seek judicial review of this administrative appeal.  You may institute judicial review in the United States District Court in the district in which you reside, have a principal place of business, where the agency records are located, or in the United States District Court for the District of Columbia.

As part of the 2007 FOIA amendments, the Office of Government Information Services ("OGIS") was created to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS in any of the following ways:

> Office of Government Information Services
> 800 N. Capitol Street, Suite 795
> Washington, DC 20002
>
> Telephone: 202-741-5770
> Facsimile: 202-741-5769
> www.archives.gov/ogis

Sincerely,

Shari Suzuki, Chief
FOIA Appeals, Policy, and Litigation
Regulations and Rulings
Office of Trade

Enclosures

**<u>EXHIBIT C</u>**

**List of Documents CBP-AP-2018-006188**

| Document | Document Description | Pages | Disposition & Exemption(s) |
|---|---|---|---|
| 1 | Contract Documents.<br><br>These documents consisted of the "Solicitation, Offer, and Award" documents with attachments including the various Amendments containing questions and answers. | 976 | The documents were released with certain redactions. Redactions were applied pursuant to Exemptions (b)(6) and (b)(7)(C) in order to protect the personal information of CBP employees and of the third parties that are identified in the documents. The information was redacted in order to protect the individuals from unnecessary and unofficial questioning and harassment. Disclosure would constitute a clear invasion of their privacy. In addition, Exemption (b)(7)(E) was applied to protect information such as internal accounting data codes in order to protect CBP's methods for categorizing, identifying, and navigating CBP records. |
| 2 | PowerPoint Prototype Site Visit Slides.<br><br>PowerPoint presentation pertaining to a site visit to San Diego on May 18-19, 2017. | 11 | The documents were released with certain redactions. Redactions were applied pursuant to Exemption (b)(7)(E) in order to protect tactical infrastructure plans that could reveal access points and other site strengths or vulnerabilities. |
| 3 | Contracting Officer Unsigned Document.<br><br>This internal document discusses upper and lower cost ranges that could be incorporated into the solicitation in order to encourage as many offerors as possible to submit proposals. | 2 | Information withheld from disclosure. The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the two-page document is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting process. |

2

| 4 | Interagency Acquisitions Supplement.<br><br>Unsigned Interagency Acquisition Supplement pertaining to construction of border infrastructure. | 2 | Information withheld from disclosure. The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the two-page document is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting and construction process. In addition, Exemptions (b)(6) and (b)(7)(C) were applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties. |
| 5 | Determination of Best Procurement Approach for Assisted Acquisitions.<br><br>Unsigned draft document sets forth findings, advantages, disadvantages, and recommendations pertaining to interagency acquisitions. | 6 | Information withheld from disclosure. The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the six pages is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting process. In addition, Exemptions (b)(6) and (b)(7)(C) were applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties. |
| 6 | Terms and Conditions for Assisted Acquisitions.<br><br>Unsigned draft document sets forth the terms and conditions for assisted acquisitions. | 9 | Information withheld from disclosure. The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the nine pages is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting process. In addition, Exemptions (b)(6) and |

| | | | |
|---|---|---|---|
| | | | (b)(7)(C) were applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties. |
| 7 | Interagency Agreement Statement of Work CBP and U.S. Army Corps of Engineers.<br><br>Statement of work pertaining to construction of the border wall.  The document contains funding calculations, objectives, and proposed taskings. | 10 | Information withheld from disclosure.  The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the 10 pages is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting and construction process.  Exemptions (b)(6) and (b)(7)(C) were also applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties.  In addition, Exemption (b)(7)(E) was applied to protect information such as financial codes in order to protect CBP's methods for categorizing, identifying, and navigating CBP records. |
| 8 | Border wall funding documents.<br><br>The four pages of documents are spreadsheets that contain proposed levels of funding for various aspects of the border wall. | 4 | Information withheld from disclosure.  The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the four pages of internal CBP documents is predecisional and deliberative in that it consists of proposed figures, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting process. |
| 9 | Proposed responses to Congressional inquiries.<br><br>The documents contain proposed | 6 | Information withheld from disclosure.  The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the six pages is |

4

| | responses to questions presented by CBP's Office of Congressional Affairs (OCA) and Members of Congress.  The documents contain edits. | | predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall program.  In addition, Exemption (b)(7)(E) was applied to protect information such as the specific location of U.S. Border Patrol forward operating bases which are strategically located for the sustainment of tactical operations. |
|---|---|---|---|
| 10 | Border Wall/Barrier System Communication and Outreach Strategy and Plan Outline.<br><br>This document sets forth a proposed comprehensive and coordinated communication and outreach strategy regarding the border wall. | 7 | Information withheld from disclosure.  The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the seven pages is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall communication and outreach strategy.  In addition, Exemptions (b)(6) and (b)(7)(C) were applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties. |
| 11 | Internal white paper draft documents pertaining to acquiring prototype wall designs.<br><br>These documents set forth the intent of the requests for proposals (RFP's), evaluation considerations, and other factors relating to awarding the prototype contracts. | 5 | Information withheld from disclosure.  The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the five pages is predecisional and deliberative in that it consists of evaluations, opinions, observations, and other findings that CBP employees deemed critical as part of administering the border wall contracting process. |
| 12 | Draft schedules. | 2 | Information withheld from disclosure.  The information was withheld from disclosure pursuant |

| | | | |
|---|---|---|---|
| | Two pages of draft schedules that set forth tentative dates pertaining to the RFP's, award of the contracts, and other matters related to the border wall. | | to Exemption (b)(5) deliberative process privilege because the information in the two pages of draft schedules is predecisional and deliberative in that it consists of observations and other findings that CBP employees deemed critical as part of administering the border wall planning process.  In addition, Exemptions (b)(6) and (b)(7)(C) were applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties. |
| 13 | Internal risk register.<br><br>This document is a tactical infrastructure risk register that sets forth various elements such as construction program risk, risk category, description of risk, probability of risk, and dollar amount of risk. | 1 | Information withheld from disclosure.  The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the risk register is predecisional and deliberative in that it consists of evaluations, observations, and other findings that CBP employees deemed critical when considering various risk factors with respect to the border wall contracting process.  Exemptions (b)(6) and (b)(7)(C) were also applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties.  In addition, Exemption (b)(7)(E) was applied to protect sensitive information pertaining to CBP infrastructure projects.  Releasing this law enforcement information could potentially enable individuals to develop countermeasures to evade border security measures relating to such projects. |
| 14 | Border Patrol Facilities and Tactical Infrastructure & Air and Marine PMO Wall Program Project Requirements Document. | 33 | Information withheld from disclosure.  The information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because the information in the documents is predecisional and deliberative in that it consists of |

6

| | | | |
|---|---|---|---|
| | This is a project requirements document that sets forth in detail various components of CBP's tactical infrastructure wall program.  The document contains objectives, justifications, diagrams, conceptual designs, exhibits, and other sensitive internal law enforcement information pertaining to the wall program. | | evaluations, observations, and other findings that CBP employees deemed critical when considering various factors pertaining to CBP infrastructure projects.  Exemptions (b)(6) and (b)(7)(C) were also applied to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties.  In addition, Exemption (b)(7)(E) was applied to protect sensitive information pertaining to CBP infrastructure projects.  Releasing this law enforcement information could potentially enable individuals to develop countermeasures to evade border security measures relating to such projects. |
| 15 | CBP Emails.<br><br>Internal CBP emails and attachments concerning border wall matters. | 19 | Information was withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because certain information in the emails is predecisional and deliberative in that it consists of evaluations, observations, and other findings that CBP employees deemed critical when considering various factors pertaining to the border wall contracting and construction process.  Exemptions (b)(6) and (b)(7)(C) were also applied to the emails to protect the identities of CBP employees in order to protect the employees from unnecessary and unofficial questioning and harassment as to the conduct of their duties. |
| 16 | Wall Outreach and Communications Meeting Agenda.<br><br>Agenda for meeting of April 10, 2017. | 1 | Released. |
| 17 | Emails. | 182 | The emails and attachments were released with redactions.  Redactions were applied pursuant to |

| | Emails and attachments that were sent to BorderWallDesignBuild@cbp.dhs.gov. | | Exemption (b)(4) to protect certain commercial information that is exempt from disclosure. Information was also withheld from disclosure pursuant to Exemption (b)(5) deliberative process privilege because certain information in the emails is predecisional and deliberative in that it consists of evaluations, observations, and other findings that CBP employees deemed critical when considering various factors pertaining to the border wall contracting and construction process. Exemptions (b)(6) and (b)(7)(C) were also applied to protect the identities of CBP employees and other third parties in order to protect the employees and third parties from unnecessary and unofficial questioning and harassment. |
| --- | --- | --- | --- |
| 18 | Proposals.<br><br>The proposals submissions consist of concept papers, financial information, technical diagrams, charts, and other related documents. These submissions are considered to be proposals as defined under 41 U.S.C. § 4702(a). These proposal documents were not selected by CBP for inclusion in a contract or otherwise incorporated into a contract by reference. The decision letter of September 10, 2018, indicates 5,482 pages of proposal documents were withheld. We note that 5,483 pages of documents were withheld as explained in the third column. | 5,483 | Information withheld from disclosure. Information was withheld from disclosure pursuant to Exemption (b)(3) because the submissions are considered proposals under 41 U.S.C. § 4702(a) and are prohibited from release by statute. Exemption (b)(4) was applied to protect certain commercial information that is exempt from disclosure. Release of this information would substantially harm the competitive positions of various companies by undercutting their ability to obtain future contracts. Exemptions (b)(6) and (b)(7)(C) were also applied to protect the identities of CBP employees and other third parties in order to protect the employees and third parties from unnecessary and unofficial questioning and harassment. In addition, Exemption (b)(7)(E) was applied to protect sensitive information pertaining to CBP infrastructure projects. Releasing this law enforcement information could potentially enable individuals to develop countermeasures to evade border security measures relating to such projects. |

8

| 19 | Letters.<br><br>Form letters informing submitters that their submissions to build the border wall were not successful. | 2 | Released. |
|----|----|----|----|
| 20 | Question/Instructions Document.<br><br>Question/Instructions Document for offerors to consider relative to submitting their construction proposals. | 1 | Released. |

**<u>EXHIBIT D</u>**

| | |
|---|---|
| **From:** | CALDWELL, EDWARD |
| **To:** | "Michael Corey" |
| **Cc:** | SUZUKI, SHARI; "vbaranetsky@revealnews.org" |
| **Subject:** | RE: Setting up a call RE: CBP-2017-051381 |
| **Date:** | Monday, October 22, 2018 12:58:00 PM |
| **Attachments:** | List of Documents CBP-AP-2018-006188.doc |

Hi Michael,

As discussed, here is a list of the documents and exemptions used in the appeal.

Thank you,

Ed Caldwell

Attorney
FOIA Appeals, Policy and Litigation Branch
Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection
Department of Homeland Security
Telephone: (202) 325-0112
Fax: (202) 325-0310


**From:** Michael Corey [mailto:mcorey@revealnews.org]
**Sent:** Thursday, October 18, 2018 7:45 PM
**To:** SUZUKI, SHARI <SHARI.SUZUKI@CBP.DHS.GOV>; CALDWELL, EDWARD
<EDWARD.CALDWELL@CBP.DHS.GOV>
**Cc:** Victoria Baranetsky <vbaranetsky@revealnews.org>
**Subject:** Re: Setting up a call RE: CBP-2017-051381

Hello, all:

Michael Corey from Reveal here. I'm wondering if you have an estimated date for when you
might be able to supply a Vaughn-like index as we discussed. Thank you again for your time.

Michael Corey
Senior Data Editor
Reveal from The Center for Investigative Reporting

On Mon, Sep 24, 2018 at 3:14 PM Michael Corey <mcorey@revealnews.org> wrote:

> That sounds great, Shari. Thank you! Good luck with the busy time.
>
> On Wed, Sep 19, 2018 at 11:32 AM SUZUKI, SHARI <SHARI.SUZUKI@cbp.dhs.gov>
> wrote:
>
>> Hi Michael,

You spoke to Ed Caldwell of my staff.  His number is (202) 325-0112.

The last 2 weeks of the fiscal year are the busiest of the year in the FOIA world.  Ed mentioned to me you wanted something similar to a Vaughn Index. While we have no obligation to produce one, I asked Ed to look at the documents that were withheld and see how difficult it would be to develop a list of the documents and what exemptions were used (Ed is usually pretty good about describing in his decisions any records that were withheld in full).  I am just super jammed up with the transition to FOIAOnline 3.0 and end of year push.

Regards,
Shari

Shari Suzuki, Chief
FOIA Appeals, Policy & Litigation Branch
Regulations & Disclosure Law Division
Office of Trade
U.S. Customs & Border Protection
(202) 325-0121
Shari.suzuki@dhs.gov

**From:** Michael Corey <mcorey@revealnews.org>
**Sent:** Wednesday, September 19, 2018 12:58 PM
**To:** SUZUKI, SHARI <SHARI.SUZUKI@CBP.DHS.GOV>
**Cc:** Victoria Baranetsky <vbaranetsky@revealnews.org>
**Subject:** Re: Setting up a call RE: CBP-2017-051381

Hi Shari:

I heard from someone in your office on Monday, but I have misplaced his name and number unfortunately. I definitely understand your schedule is tight, but can we set up a time for a call this week or on Monday?

Thank you,

Michael Corey
Senior Data Editor
Reveal from The Center for Investigative Reporting
510.809.3178

On Fri, Sep 14, 2018 at 3:15 PM, Michael Corey <mcorey@revealnews.org> wrote:

Hello Shari:

Michael Corey from Reveal here. We received your response to our appeal earlier this week. We'd like to set up a call at your earliest convenience to discuss some questions

we have about what was/wasn't included and redacted.

Looking forward to speaking.

Thank you,

Michael Corey
Senior Data Editor
Reveal from The Center for Investigative Reporting
510.809.3178
mcorey@revealnews.org