IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF D.C.

| | | |
|---|---|---|
| **THE CENTER FOR INVESTIGATIVE REPORTING**, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-2901 |
| v. | ) ) | |
| **U.S. CUSTOMS AND BORDER PROTECTION**, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

This is a simple case of over-redaction involving a FOIA request for records related to the proposed border wall that has occupied a significant amount of political and public attention and debate. While, based on Defendants' *Vaughn* Index and affidavit, Plaintiff does not dispute Defendants' Exemption 3 claim, Defendants have not established their Exemption 4, Exemption 5, or aspects of their Exemption 7(E) claims.

Under Exemption 4, Defendants concede that the records were required to be produced to the government, and thus, are subject to lesser protection. But in violation of established case law, Defendants offer only a conclusory agency declaration and none from the submitters themselves. Under Exemption 5, Defendants have not established or even addressed the "foreseeable harm" requirement under the 2016 FOIA amendments with the required level of specificity. And under Exemption 7(E), Defendants rely on statements that are so sweeping and lacking in specific detail that even features of the wall visible to the naked eye fall within the blanket assertions (including whether it will be painted black and adorned with spikes and other

things the President has specified, as well as other features that have been disclosed in publicly available pictures.  *See* Nick Miroff et al, *Trump Wants His Border Barrier To Be Painted Black With Spikes. He Has Other Ideas, Too*, Wash. Post, May 16, 2019.[1]

Defendants' motion for summary judgment should be denied and Plaintiff's motion for summary judgment should be granted.

## I.   FACTUAL BACKGROUND

Plaintiff challenges the withholding of records under Exemption 4, including: "information pertaining to matters such as specific company resources that are dedicated to construction, company border security capabilities, company financial data and other contract management information." Def. SOF ¶ 25.  Plaintiff challenges the withholding of records under Exemption 5, including: "information under consideration by CBP as the agency moved towards a decision on how to administer the evolving process."  *Id.* at ¶ 30.  Plaintiff challenges the withholding of records under Exemption 7(E), including: records "pertaining to the procurement and construction of a border wall." *Id.* at ¶ 37.

Plaintiff is not challenging Defendants' withholdings made pursuant to Exemption 3 and Exemptions 6 and 7(C).

## II.   LEGAL STANDARDS

FOIA limits agencies' ability to keep records secret and reflects a policy favoring disclosure. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 754 (1989).  The Supreme Court has repeatedly stressed "the fundamental principle of public access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp.*, 493

---

[1] *Available at* https://www.washingtonpost.com/national/trump-wants-his-border-barrier-to-be-painted-black-with-spikes-he-has-other-ideas-too/2019/05/16/b088c07e-7676-11e9-b3f5-5673edf2d127_story.html (last accessed June 5, 2019).

U.S. 146, 151 (1989). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine (narrow) exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Because disclosure is the "dominant objective" of FOIA, courts narrowly construe FOIA exemptions. *Id.* at 579-81 (reversing appellate court).

A central purpose of FOIA is to "check against corruption and to hold the governors accountable to the governed." *See* Department of Justice, *About FOIA*[2] (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). When an agency claims an exemption, "FOIA expressly places the burden on the agency to sustain its action and directs the district courts to determine the matter *de novo*." *Reporters Comm.*, 489 U.S. at 755 (citing 5 U.S.C. § 552(a)(4)(B)).

An agency may meet its burden of proof by providing affidavits. *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Conclusory" or "boilerplate" affidavits, however, do not suffice. *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1101 (D.C. Cir. 2014). Nor do affidavits that "merely recite statutory standards" or are "vague or sweeping." *Id.* Rather, agency affidavits must contain "specific detail" justifying withholding, ***and*** not be called into question by contradictory evidence, to carry the government's burden of proof. *ACLU*, 628 F.3d at 619; *see also Multi Ag Media LLC v. Dep't of Ag.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008).

### III.   ARGUMENT

#### A.  Defendants Failed To Carry Their Burden Of Proving Exemption 4

Defendants concede that they required the production of the records at issue. Suzuki Decl. ¶ 25. Defendants also concede that Exemption 4 offers markedly less protection to

---

[2] *Available at* https://www.justice.gov/archives/open/foia (last accessed June 5, 2019).

material "required" to be produced. *Id.* Here, the test laid out in *National Parks & Conservation Ass'n v. Morton* applies. 498 F.2d 765, 770 (D.C. Cir. 1974); *see also Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992). Thus, Defendants can only withhold the records if they prove that disclosure is likely "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks*, 498 F.2d at 770. Of the test's two prongs, Defendants only assert competitive harm. Suzuki Decl. ¶ 25.

Critically, Defendants offer no declarations from the submitters themselves. "Courts have repeatedly rejected competitive harm claims when they are advanced solely by the defendant agencies." *Newry Ltd. v. U.S. Customs & Border Prot. Bureau*, 2005 WL 3273975, at *4 (D.D.C. July 29, 2005) (rejecting competitive harm advanced solely by the agency and noting the lack of submitter affidavits) (citing *Wiley Rein & Fielding v. Dep't of Commerce,* 782 F.Supp. 675, 676 (D.D.C.1992) (rejecting competitive harm claim because "no evidence" was submitted to suggest that the companies themselves object to disclosure)); *Brown v. Dep't of Labor,* 1991 U.S. Dist. LEXIS 1780, at *7 (D.D.C. Feb. 15, 1991) (rejecting competitive harm claim because submitters of information failed to protest the release of information); *100Reporters LLC v. United States Dep't of Justice*, 307 F.R.D. 269, 280 (D.D.C. 2014) (quoting and citing same); *see NYC Apparel FZE v. U.S. Customs & Border Prot.*, 484 F. Supp. 2d 77, 93–94 (D.D.C. 2007) ("the agency must submit evidence showing that the submitters of the information themselves object to the disclosure of the information"). This reason alone is sufficient to reject Defendants' Exemption 4 claim.

In addition, however, Defendants offer only generic and conclusory statements that there is a risk of competitive harm.  They state that "releasing the information would reveal the competitive vulnerabilities and operational capabilities of various competitors."  Suzuki Decl. ¶ 25.  Defendants then state that release "would enable competitors to exploit this information for their benefit by enhancing their ability to obtain future government contracts by formulating and altering their business strategies."  *Id.*  These "conclusory" and "vague or sweeping" statements lack the "specific detail" required by law.  *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1101 (D.C. Cir. 2014).

Defendants also failed to prove that there is any foreseeable harm under Exemption 4.  As addressed in detail below, unless "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" the records sought must be produced.  5 U.S.C. § 552(a)(8)(A)(i).  Congress passed this amendment to the FOIA statute to make it clear that FOIA contains a presumption of openness and that government agencies cannot default to secrecy any time they can piece together a justification for asserting an exemption.  Defendants did not meet their burden regarding foreseeable harm and the records must be produced.

Finally, even without knowing precisely what is under the redactions, it is unlikely that the information is exempt because no competitive harm will result from release of information about this one-time, non-recurring project.  In sum, Defendants' Exemption 4 claim fails for three independent reasons: (1) they offer no declarations from the submitters, (2) the statements in Defendants' declaration lack specific detail and are so generic and conclusory that they would not suffice even if they had been provided by the submitters themselves, and (3) Defendants failed to carry their burden of proving foreseeable harm.

### B. Defendants Have Not Established Foreseeable Harm As Part of Their Exemption 5 Claims

Defendants bear the burden of proving that Exemption 5 (like all others) applies to the withheld records. *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). For a record to qualify for the deliberative process privilege, it "must be both pre-decisional and deliberative." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). As D.C. courts have stated: "It bears emphasizing at the outset that '[t]he need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 167–68 (D.D.C. 2011) (citing and quoting *Animal Legal Defense Fund, Inc. v. Dep't of the Air Force,* 44 F.Supp.2d 295, 299 (D.D.C.1999) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854*,* 867 (D.C. Cir. 1980)).

Under the 2016 amendments to the FOIA statute, even if a record would otherwise be exempt, however, it cannot be withheld unless there is (1) a legal prohibition against release, or (2) "the agency reasonably foresees that disclosure would harm an interest protected by an exemption[.]" 5 U.S.C. § 552(a)(8)(A)(i). In passing these amendments, "Congress sought to establish a 'presumption of openness' in FOIA." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72–73 (D.D.C. 2018). This was "based on the recognition that 'from the beginning, agencies have taken advantage of these exemptions to withhold any information that might technically fit.'" *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, No. 17-CV-1283 (EGS), 2019 WL 1317557, at *5 (D.D.C. Mar. 22, 2019) (quoting 162 Cong. Rec. H3714-01, H3717162

(2016) (noting that although some agencies "have made an effort to comply with the letter of the law, very few have complied with the spirit of the law").

"[P]ursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Id.* at 73. To satisfy this heightened requirement, the agency must "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." *Judicial Watch*, 2019 WL 1317557, at *5 (quoting H.R. Rep. No. 114-391, at 9 (2016)). "Boilerplate" language is insufficient. *Id.* Similarly, the Senate Report for the bill explains that "mere speculative or abstract fears . . . are an insufficient basis for withholding information." S. Rep. No. 114–4, at 8 (2015).

*Rosenberg* held that the government may satisfy this burden through a "categorical approach," though even still it "must do more than perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would" result in the claimed harm. 342 F. Supp. 3d 62, 72–73 (D.D.C. 2018). A Northern District of California decision goes further, however, requiring proof of harm for each specific record. *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency,* No. 16-CV-05254-MEJ, 2017 WL 5972702, at *6 (N.D. Cal. Nov. 30, 2017), *appeal dismissed*, No. 17-17539, 2018 WL 3155689 (9th Cir. Jan. 12, 2018) ("Absent a showing of foreseeable harm to an interest protected by the deliberative process exemption, the documents must be disclosed. In failing to provide basic information about the deliberative process at issue and the role played **by each specific document**, FEMA does not meet its burden of supporting its withholdings with detailed information pursuant to the

deliberative process privilege." (emphasis added)). While there are no Circuit Court decisions on the foreseeable-harm requirement, D.C. courts have applied it.

While either a categorical or document-specific approach requires a showing that Defendants have not made, this Court should adopt the document-specific (or here, redaction-specific) approach. Congress explained that the foreseeable harm standard mandates that "the content *of a particular record* should be reviewed and a determination made as to whether the agency reasonably foresees that disclosing that particular document, given its age, content, and character, would harm an interest protected by the applicable exemption." S. Rep. No. 114–4, at 8 (emphasis added). Defendants' generic statements do not even carry their burden of proving foreseeable harm categorically, let alone on a document-by-document basis.

As elsewhere in the exemption analysis, the government bears the burden of proof on foreseeable harm. *Judicial Watch,* 2019 WL 1317557, at *3. The declarations put forth by Defendants do not "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." Suzuki Decl. at ¶¶ 26-31. In fact, the declaration does not even directly address foreseeable harm. *Id*.

> As explained in *Judicial Watch* in finding the government failed to meet its burden:
>
> In Mr. Graff's first declaration he explained that release of the withheld information "could have a chilling effect on the discussion within the agency in the future" and "discourage[ ] a frank and open dialogue among agency employees." See Graff Decl., ECF No. 14-2 at 4. He further explained in his second declaration that the "foreseeable harm" in releasing the withheld information was that it "could have a chilling effect on the discussions within the agency" and added that these "deliberations are essential to ensuring that the right information is delivered to [the] public" and that failure "to have these frank deliberations could cause confusion if incorrect or misrepresented climate information remained in the public sphere." Second Graff Decl., ECF No. 17-2 at 2–3. These general explanations of the possibility of a "chilling effect" fall short of articulating "a link between the specified harm and specific information contained in the material withheld." See H.R. Rep. No. 114-391, at 9 (2016).

> \*\*\*
>
> The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld. In other words, the Act requires more than speculation, which is all that Commerce has provided through its declarations and Vaughn indexes.

*Id.*

In this case, the declaration does not discuss foreseeable harm or even use the word "harm" when discussing Exemption 5. Suzuki Decl. at ¶¶ 26-31. In their brief Defendants merely characterize two sentences as addressing harm. Def. MSJ at 13. These two sentences at most make passing reference to the possibility of harm with generic and barebones language. Suzuki Decl. at ¶ 30. Defendants state that release "would have revealed how CBP employees are prioritizing different facts and what facts they consider to be important in the process," and that release would have created "confusion regarding the reasons and rationales that may not ultimately be the grounds for any actions the agency may take regarding the ongoing process." Def. MSJ at 13; Suzuki Decl. at ¶ 30. Just as in *Judicial Watch*, these "general explanations" fall short of "articulating 'a link between the specified harm and specific information contained in the material withheld.'" *Judicial Watch*, 2019 WL 1317557, at \*5. The question is not whether it is possible that disclosure would discourage frank discussions. Rather, the question is whether it is both reasonably foreseeable that it will *and*, if so, what is the link between the harm and records at issue. Defendants have only addressed the potential for harm in the most cursory manner and have failed to address the link entirely. As a result, the deliberative process exemption does not apply and the records must be produced.

### C.  Defendants Failed To Carry Their Burden Of Proving Exemption 7(E)

To invoke the "techniques and procedures" prong of Exemption 7(E), the government must demonstrate that its withholdings meet three basic requirements.  First, "the government must show that the documents were in fact 'compiled for law enforcement purposes' and not for some other reason." *Am. Immig. Council v. U.S. Dep't of Homeland Sec.*, 950 F.Supp.2d 221, 245 (D.D.C. 2013) (citing 5 U.S.C. § 552(b)(7)).  "Second, [the agency] must show that the records contain law-enforcement techniques and procedures that are 'generally unknown to the public.'"  *Id.* (quoting *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F.Supp.2d 13, 36 (D.D.C. 2012)).  "Finally, the government must show that disclosure 'could reasonably be expected to risk circumvention of the law.'"  *Id.* (citing 5 U.S.C. § 552(b)(7)(E) and *Nat'l Whistleblower*, 849 F.Supp.2d at 36).  *See also Elec. Privacy Info. Ctr. v. Customs & Border Prot.*, 160 F. Supp. 3d 354, 358–59 (D.D.C. 2016).

Defendants' assertions of Exemption 7(E) are overly vague and sweeping and it appears Defendants simply withheld too much information.  Plaintiff does not dispute that there may be portions of records that are properly exempt under 7(E), but the *Vaughn* Index provided is far too vague to support Defendants' blanket assertions of 7(E).  *Elec. Privacy Info. Ctr.*, 160 F. Supp. 3d at 359 (the declarant's "minimally descriptive" statements "do not provide the Court with sufficient detail regarding the law enforcement techniques or procedures the defendant seeks to protect."); *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (the defendant's submissions "offer too little detail to allow this Court to undertake a meaningful assessment of the redacted material"); *Am. Immigration Council*, 950 F. Supp. 2d at 246 ("vaguely formulated descriptions will not suffice; accordingly, the government must provide sufficient facts and context"); *Allard K. Lowenstein Int'l Human Rights Project v. U.S. Dep't of Homeland Sec.*, 603

F. Supp. 2d 354, 360 (D. Conn. 2009) (criticizing agency descriptions as "so vague and general that they are of little, or no, use to Plaintiffs or this Court"); *El Badrawi v. Dep't. of Homeland Sec.*, 583 F. Supp. 2d at 313-16, 319-20 (D. Conn. 2008) (ordering *in camera* review for all Exemption 7(E) claims made by defendants due to deficiencies in declarations).

Although the D.C. Circuit "'ha[s] never required repetitive, detailed explanations for each piece of withheld information,' the FOIA nevertheless requires an agency to provide 'a relatively detailed justification' for the application of FOIA exemptions." *Elec. Privacy Info. Ctr.*, 160 F. Supp. 3d at 360 (citations omitted). Defendants' *Vaughn* Index uses overly broad and vague statements, including the following:

- "Redactions were applied pursuant to Exemption (b)(7)(E) in order to protect tactical infrastructure plans that could reveal access points and other site strengths or vulnerabilities." Def. Ex. B at entry 2.

- "Exemption (b)(7)(E) was applied to protect information such as the specific location of U.S. Border Patrol forward operating bases which are strategically located for the sustainment of tactical operations." Def. Ex. B at entry 9.

- "Exemption (b)(7)(E) was applied to protect sensitive information pertaining to CBP infrastructure projects. Releasing this law enforcement information could potentially enable individuals to develop countermeasures to evade border security measures relating to such projects." Def. Ex. B at entries 13, 14, 18.

- "[I]nformation was withheld relating to tactical infrastructure construction plans that could reveal potential strengths or vulnerabilities to violators as well as other sensitive information relating to U.S. Government border facilities and operations. Releasing this data could enable individuals to develop countermeasures to evade detection thereby circumventing the law." Def. Ex. A at entry 2.

- "[S]pecific information was withheld pertaining to U.S. Border Patrol forward operating bases, which are forward facilities in remote locations for the sustainment of sector and/or station tactical operations. Release of this information could enable individuals to create a blueprint of specific station activity thereby revealing the comparative strengths and weaknesses of various U.S. Border Patrol stations. This information could enable individuals to develop countermeasures to evade border security measures thereby circumventing the law." Def. Ex. A at entry 11.

- "[S]pecific information was withheld pertaining to the allocation of U.S. Border Patrol resources during the construction of infrastructure. Release of this information could enable individuals to create a blueprint of specific station activity during construction thereby revealing the comparative strengths and weaknesses of various U.S. Border Patrol stations. This information could enable individuals to develop countermeasures to evade border security measures thereby circumventing the law." Def. Ex. A at entries 15, 16.

These statements are so sweeping and asserted over so many pages of records as to encompass even information about the wall that is visible to the naked eye. Basic information about walls—such as height, color, thickness and whether there are spikes—is not confidential and is generally known to the public, and therefore not exempt under Exemption 7(E). *See Founding Church of Scientology of D.C. v. NSA*, 610 F.2d 824, 832 n.67 (D.C. Cir. 2004) (finding Exemption 7(E) does not ordinarily protect "routine techniques and procedures already well known to the public"); *Elec. Frontier Found. v. DOJ*, No. 17-1039, 2019 WL 1714433, at *3 (D.D.C. Apr. 17, 2019) (same) (quoting *Founding Church of Scientology of D.C.*, 610 F.2d at 832); *Elkins v. Fed. Aviation Admin.*, 134 F.Supp.3d 1, 4 (D.D.C. 2015) (agency "must [also] show that the records contain law-enforcement techniques and procedures that are generally unknown to the public") (quotation and citation omitted). Any person can simply walk up to the wall and look at it. Yet as far as Plaintiff can tell from the general statements provided, this information (and more) has been withheld.

Moreover, the President of the United States has viewed the blueprints for the wall and made public comments about it.[3] These comments include discussing the wall's color and stating that it should be painted "flat black." The President also stated that the blueprints contain

---

[3] Nick Miroff et al, *Trump complains border wall is 'ugly' and wants it painted black with spikes, officials say*, Independent (June 6, 2019), https://www.independent.co.uk/news/world/americas/us-politics/trump-mexico-border-wall-spikes-homeland-security-a8917846.html.

too many gates with openings that are too large.  Surely, if the commander in chief saw fit to release this information regarding the wall's blueprints, information visible to the naked eye, it could not endanger any law enforcement techniques.  At a minimum, Defendants must release this and other comparable information.

In short, Defendants' *Vaughn* Index is just too vague and sweeping to carry their burden of proof under Exemption 7(E).

### IV.    CONCLUSION

This Court should deny Defendants' motion for summary judgment and grant Plaintiff's motion for partial summary judgment.

Dated:  June 14, 2019

RESPECTFULLY SUBMITTED,

*/s/ Joshua Hart Burday*

_____

Attorneys for Plaintiff
THE CENTER FOR INVESTIGATIVE REPORTING

Matthew Topic, Bar No. IL0037
Joshua Burday, Bar No. IL0042
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
foia@loevy.com

too many gates with openings that are too large.  Surely, if the commander in chief saw fit to release this information regarding the wall's blueprints, information visible to the naked eye, it could not endanger any law enforcement techniques.  At a minimum, Defendants must release this and other comparable information.

In short, Defendants' *Vaughn* Index is just too vague and sweeping to carry their burden of proof under Exemption 7(E).

### IV.    CONCLUSION

This Court should deny Defendants' motion for summary judgment and grant Plaintiff's motion for partial summary judgment.

Dated:  June 14, 2019

RESPECTFULLY SUBMITTED,

*/s/ Joshua Hart Burday*

_____

Attorneys for Plaintiff
THE CENTER FOR INVESTIGATIVE REPORTING

Matthew Topic, Bar No. IL0037
Joshua Burday, Bar No. IL0042
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
foia@loevy.com

## **CERTIFICATE OF SERVICE**

    I, Joshua Burday, and attorney, hereby certify that on June 14, 2019, I caused the foregoing PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT to be served on all counsel of record via the Court's CM/ECF system.

                                                */s/ Joshua Hart Burday*